Joanne POE, Appellant,

v.

Robert POE, Appellee.

Robert POE, Cross-Appellant,

v.

Joanne POE and Paul M. Lewis, d/b/a Lewis, Bland & Preston, Cross-Appellees.

Court of Appeals of Kentucky.

March 28, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court June 24, 1986.

Paul M. Lewis, Barry Birdwhistell, Elizabethtown, for appellant/cross-appellees.

Robert S. Silverthorn, Jr., Louisville, for appellee/cross-appellant.

Before CLAYTON, DUNN and McDONALD, JJ.

CLAYTON, Judge.

This is an appeal and cross-appeal from a judgment of the Hardin Circuit Court dissolving the marriage of Joanne and Robert Poe. On appeal, Joanne argues that the trial court clearly erred in awarding custody of the couple's sole child, Robert E. Poe III (Bobby), to his father, and further erred in relying upon the testimony of two psychologists retained by the father to justify that grant of custody. Robert, by way of cross-appeal, first maintains that the trial court abused its discretion in awarding Joanne's counsel $1,500 as attorney's fees under KRS 403.220 given the absence of any evidence of record to support that amount. It is also argued that the circuit court clearly erred in granting Joanne a portion of Robert's nonvested military pension.

Robert and Joanne were married on July 15, 1972, at Fort Lee, Virginia. Approximately twelve years later, on September 24, 1984, Joanne petitioned for dissolution of marriage. At the time of the proceedings on the petition, Joanne was 29 years old and employed as a civil servant at Fort Knox, Kentucky, with an annual gross salary of $13,291. Robert, who had enlisted in the United States Army in July of 1971, was a career enlisted man with a pay grade of E–7, earning approximately $24,000 per year gross pay. Other than Robert's nonvested military pension, the major assets divided by the contested judgment consist of the couple's marital residence, valued at $46,900, two Toyota automobiles worth $8,900, and various miscellaneous items of personal property estimated to be about $15,500 in value. These items (excepting the pension) were primarily divided by agreement of the parties and are not involved in the present appeal.

On January 9, 1985, a judgment and decree of dissolution were entered, with questions regarding child custody, maintenance, and division of property being reserved. Supplemental findings of fact, conclusions

of law and judgment were then entered on April 30, 1985. In that subsequent judgment, the circuit court finds, as to custody, that both parents are competent, qualified parents who could provide a good home for their son. However, based upon the expert testimony of psychologists Lippman and Rhodes, the court determined that only the father could provide for the eight-year-old son's psychological need for a male role model at this age in his life. Accordingly, Robert was awarded custody of Bobby with Joanne being granted liberal visitation rights.

As for Robert's nonvested military pension, it is declared to be marital property and is to be divided under the following formula:

$$\frac{150 \text{ months (duration of marriage)}}{\text{total months of military service}} = \text{\% of future monthly retirement payments which were earned during the marriage.}$$

| % of future monthly retirement payments earned during the marriage | × | ½ of Robert's disposable retired or retainer pay (as defined in 10 U.S.C. section 140 8(c)(1)),<br><br>OR<br><br>½ of the disposable retired or retainer pay which would be payable to Robert if he retired at the same rank and basic pay rate which he had attained as of January 5, 1985. | + | that portion of any post-retirement cost-of-living increases (10 U.S.C. section 140(a)) which are proportional to Joanne's interest in the disposable retired or retainer pay computed as of the date of retirement. |
|---|---|---|---|---|

WHICHEVER IS LESS.

Reasoning to support this disposition, the circuit court notes that, under the federal law governing military pensions, a potential military pension may be treated as marital property if more than ten years of the pension had been earned prior to divorce and if more than ten years of it were earned during the marriage. The court also contrasts Robert's nonvested military pension with the vested pension of an unretired Ford Motor Company employee whose benefits are lost upon death and are offset by any future social security benefits awarded (taken from an actual case before the circuit court). Such employee's benefits are argued to be no more speculative than Robert's nonvested military pension, both of which are incapable of being reduced to present value. Though *Ratcliff v. Ratcliff*, Ky.App., 586 S.W.2d 292 (1979), and *Light v. Light*, Ky.App., 599 S.W.2d 476 (1980), are acknowledged to permit the treatment of nonvested pensions as an economic circumstance to be considered in an award of maintenance, the circuit court points out correctly that this approach is not adequate where the unpensioned spouse is otherwise disqualified to receive maintenance under KRS 403.200(1), as was found in the present case.

We begin our discussion of the issues with child custody and the expert testimony thereon. As the parties are well aware, this Court is bound by the "clearly erroneous" standard of review found in CR 52. *Ghali v. Ghali*, Ky.App., 596 S.W.2d 31 (1980). We may not disturb the findings of fact of the lower court unless they are unsupported by substantial evidence of probative value. Under KRS 403.270, the relevant factors which determine child custody, and upon which findings of fact must therefore be made, are the wishes of the child's parents as to his custody, the wishes of the child as to his custodian, the interaction of the child with his parents and siblings, the child's adjustment to his home, school and community, and the mental and physical health of all persons involved.

Of the five factors listed above, only the final one, mental and physical health, is seriously disputed. Obviously, both parents wish to have custody and consider themselves fit custodians, which the court notes and the record directly supports. Bobby's wishes in the matter are wisely disregarded by the trial court given his youth. As for the child's interaction with each of the parents, substantial evidence proves that the relationship and interaction of each parent with the child is excellent. Bobby's adjustment to his home, school or community is not a material consideration, as his parents have elected to continue living in the same community and Bobby will continue to attend the same school.

Therefore, no clear error necessitating reversal is present with respect to any of the first four factors of KRS 403.270(a)–(d). Reversal, if it is to occur, must relate to the court's conclusion that Bobby's best interest requires that his father have custody in order to provide a needed male role model.

Although Joanne necessarily challenges this finding, the crux of her argument simply stated is that the expert testimony of psychologist Lippman and Rhodes is incompetent, apparently because the two professionals were retained by the father rather than appointed by the court under KRS 403.290. Joanne maintains that this expert testimony was simply an improper attempt to indirectly put before the trial court testimony concerning Bobby's wishes as to custody, in violation of the court's earlier decision not to interview the child on such matters. However, as the trial court specifically chose to disregard those portions of the psychologists' testimony regarding Bobby's preference (and also those portions relating to expert testimony on Robert's parenting skills), her argument in this regard has little weight.

■ Likewise, we find little merit in Joanne's argument on competency. The court is not limited by KRS 403.290 to hearing the testimony of only those professionals it elects to appoint. The statute expressly provides that the court *may* seek the written advice of professionals. Testimony of various experts retained by the parties is clearly admissible so long as the expert testifying is qualified as such and his testimony is relevant to the issues at hand. Indeed such testimony is commonplace in child custody actions. Joanne, had she chosen to do so, was free to acquire the testimony of her own outside professionals and also to cross-examine those which Robert retained (which she, by counsel, did). Therefore, any significance arising from the fact that Robert retained Doctors Lippman and Rhodes runs not to their competency, but solely to the weight to be given their testimony. In the instant case, the trial court elected to accept the testimony of the two psychologists of Bobby's

need for a male role model. As substantial evidence in the form of their testimony as to various psychological tests performed and interviews taken supports the court's finding on the child's psychological needs, we are bound to affirm. *See Atwood v. Atwood*, Ky., 550 S.W.2d 465 (1976) (the mental and physical health of all parties in a child custody action is of major concern); *Eviston v. Eviston*, Ky., 507 S.W.2d 153 (1974) (custody decision will not be reversed in the absence of evidence showing it is not in child's best interest). In concluding our discussion on this issue, we note that Joanne, by counsel, for the first time on appeal, attempts to raise the issue of gender-based discrimination as a basis for the court's custody decision. Obviously, we are precluded from addressing this question given the failure of the appellant to bring it to the attention of the court below.

■ As for Robert's argument with respect to attorney's fees, we note that such matters have repeatedly been held to be entirely within the discretion of the trial court. *E.g., Wilhoit v. Wilhoit*, Ky.App., 521 S.W.2d 512 (1975); *Browning v. Browning*, Ky.App., 551 S.W.2d 823 (1977). All that is expressly required is that the trial court consider the financial resources of the parties when ordering a party to pay a reasonable amount in attorney's fees. While it is quite obviously the better practice for affidavits or other evidence to be submitted in support of an award of fees, we do not find any abuse of discretion in the present court's award of $1,500. Given the extent of the record, the number of depositions taken and numerous motions involved, $1,500 was not an unreasonable fee and, in fact, was $500 less than the amount requested.

We are, therefore, left with the final, and perhaps, the most significant of the arguments raised by the parties: the division of Robert's nonvested military pension as marital property. The Kentucky Supreme Court has yet to have addressed this issue. At best, the Supreme Court, in *Jones v. Jones*, Ky., 680 S.W.2d 921 (1984), has de-

termined that, in the absence of a statute to the contrary, military retirement pay is to be treated as marital property for the purposes of KRS 403.190(2) and its mandate that all marital property acquired during the marriage be divided in just proportions. *Id.* at 921–22. As that opinion points out, unlike the present appeal, all of James Jones' military retirement pay was accumulated entirely during the marriage and was, therefore, vested at the time the decree was entered. Moreover, the Supreme Court in *Jones, supra,* expressly limited its opinion to the facts before it, concluding that it did not attempt to resolve problems arising from different fact situations. *Id.* at 922.

In contrast, our own Court has previously examined the question of nonvested military pensions as marital property in *Light v. Light,* Ky.App., 599 S.W.2d 476 (1980). In *Light, supra,* the parties had been married for some 22½ years. At the time their joint petition for divorce was granted, Charles Light, a master sergeant in the United States Army, was four months short of becoming eligible for retirement. Had he chosen to take immediate retirement upon eligibility, his retirement pay would have been approximately $544 per month. Faced with those facts, the trial court refused to award Jo Ann Light any portion of Charles' pension. On appeal, we affirmed, citing *Russell v. Russell,* Ky. App., 605 S.W.2d 33 (1980), and *Ratcliff v. Ratcliff,* Ky.App., 586 S.W.2d 292 (1979). Given the holding of *Jones, supra,* it is now readily apparent that *Russell, supra,* and its own holding that a vested military pension cannot be marital property is no longer the law of the Commonwealth. This leaves only *Ratcliff, supra,* as the basis in *Light, supra,* for declaring a nonvested military pension to be nondivisible. In *Ratcliff, supra,* we held that excluding an employer's contribution to a husband's pension plan was not an error where the employee husband's rights in the pension fund had not vested at the time of dissolution. *Id.* at 293. At best, such a "speculative" value was held to be capable only of being considered as an "economic circumstance"

to be taken into account in the division of marital property under KRS 403.190. *Ratcliff, supra,* at 293.

This same holding was echoed in *Light, supra,* at 478, in which a separate panel of this court held the above-described nonvested military pension to be "a basis for paying maintenance if the equity of the total economic circumstances of the parties, including the spouse's lack of property and ability to support herself, require that some amount of maintenance be awarded." Given the practical and conceptual inadequacies of such treatment of nonvested military pensions, we believe the time has come for a re-examination of *Light, supra,* and the status of nonvested military pensions.

Comparison of holdings of *Ratcliff, supra,* and *Light, supra,* reveals an immediate variance in the treatment of nonvested military pensions. Nowhere in *Ratcliff, supra,* does it state that a nonvested military pension, as an "economic circumstance," is to be considered as a factor in awarding maintenance. Yet *Light, supra,* treats the pension involved as an equitable circumstance potentially entitling the non-military spouse to an award of maintenance under KRS 403.200. Both these conceptually distinct approaches raise serious questions. While both *Ratcliff, supra,* and *Light, supra,* rely upon the common rationale of "economic circumstance," the results they achieve are totally distinct. Apparently, *Ratcliff, supra,* would seek a just distribution of property by awarding the nonmilitary spouse the lion's share of the marital property to offset his or her spouse's future pension income. *Light, supra,* on the other hand, would seek to shift the benefit of this future income to maintenance payments for the civilian spouse. The difficulty with the first approach, the *Ratcliff* solution, is that the time at which the economic circumstances of each spouse are to be considered is "when the division of property is to become effective," which in most cases will be the date of the decree. At that time, the nonvested pension is no less "speculative" than it would otherwise

have been if it were declared to be marital property. The serviceman involved may still retire or die before his interest in payment vests thus leaving the nonmilitary spouse with a disproportionate share of the couple's property. As a practical matter, also, there simply may not be enough marital property to compensate. If then, in fact, the speculative nature of nonvested pensions is truly the stumbling block, the *Ratcliff* decision is no cure for the problem.

As for *Light, supra,* its primary deficiency in treating nonvested military pensions as a circumstance justifying maintenance is the dual requirement of KRS 403.200(1)(a) and (b). A spouse seeking maintenance under those provisions must first lack sufficient property to meet his reasonable needs and be unable to support himself through appropriate employment, assuming child care responsibilities do not prevent outside employment. In the present case, Joanne Poe, as a civil servant employed at Fort Knox for a gross salary of $13,000 a year, was not entitled to and was not awarded any maintenance. Maintenance, under KRS 403.200, rests upon the ability of a spouse to meet his or her own financial needs either through employment or the distribution of marital and nonmarital *property.* The statute makes no direct reference to economic circumstances in respect to entitlement to maintenance. In fact, only after the twin conditions of KRS 403.200(1) are met, does the statute make any reference to the spouse from whom maintenance is sought, and then with respect only to his ability to meet his own needs while paying maintenance. KRS 403.200(2)(f). Other than employment income, *property* is the focus of the statute. As we have already noted, neither *Ratcliff, supra,* nor *Light, supra,* concedes a nonvested pension to be property. Therefore, as *Light, supra,* conceptualizes such a pension, it is, as we have shown, unrelated to an award of maintenance due to its nonproperty status. Additionally, as a practical matter, *Light, supra,* in effect penalizes the working nonmilitary spouse who by his or her industry has not only maintained a home for the military marriage partner but

has been diligent enough to improve the family standard of living through outside employment during the marriage. Application of *Light, supra,* and the requirements of KRS 403.200(1) doubly burden these unfortunate spouses by denying them access to the nonvested pension through the marital property provisions of KRS 403.190 or by the maintenance provisions of KRS 403.-200 in the case of working spouses such as Joanne Poe who do not meet the standards of KRS 403.200(1).

In our view, both of these two approaches are the result of an effort to circumvent the narrow legal conclusion that nonvested military pensions are somehow not marital property due to their "speculative" nature. A look at the common law emphasis on this concept of "vesting" as it relates to pensions reveals that it has entered our case law in a most curious and unexplained fashion.

Our own Court first makes mention of it in *Foster v. Foster,* Ky.App., 589 S.W.2d 223 (1979), holding a noncontributory vested pension plan to be marital property where the husband's 19-year participation in the plan had occurred entirely during the 30-year marriage. As support for its conclusion with regard to the importance of vesting, *Foster, supra,* relies upon the earlier Kentucky Supreme Court decision, *Beggs v. Beggs,* Ky., 479 S.W.2d 598 (1972). *Beggs, supra,* at 600 does not, however, mention vesting, much less its importance as a factor to be considered in treating pensions as marital property. Instead, the decision merely elects to treat the entitlement of the wife, Ruby Beggs, in the Kentucky teachers' retirement fund as marital property. The sole comment on this result is contained in the following two sentences from the opinion:

> The chancellor made no error in awarding to Ruby, by way of restoration the inheritance from her parent. [citations deleted]. However, the teachers' retirement fund entitlement was directly related to earnings; therefore, it must take that classification.

*Beggs, supra,* at 601–02. Other than the implication that Ruby's interest in the fund had vested due to the use of the term "entitlement," the opinion gives no other indication as to her status in the fund. To us, these brief sentences seem a slender thread upon which to support the conclusion that vesting is the most important criteria for determining the characterization of such pensions as divisible marital property. *Foster, supra,* at 224. KRS 403.190, our state's dissolution statute dealing with the disposition of marital property, makes no mention of vesting and, indeed, does not even attempt to define the term "property." To find a definition of "vested" as used in relation to pensions one must look to *Owens v. Owens,* Ky.App., 672 S.W.2d 67 (1984). According to *Owens, supra,* a vested interest in a pension fund is one which entitles the owning party to "a current right to the proceeds of the plan." *Owens, supra,* at 69 (citing *Savings and Profit Sharing Fund of Sears Employees v. Gago,* 717 F.2d 1038 (7th Cir.1983)). This is, according to *Owens, supra,* to be distinguished from whether a fund is in pay status, which we interpret to mean an entitlement to immediate payment, as opposed to a guaranteed right of future payments at some later date. *Id.*

From this definition, it is apparently reasoned, *sub silencio,* that absent some present right to payment, future or immediate, a spouse's interest in a nonvested pension plan such as the military plan now before us cannot be considered "property" and is instead a mere expectancy which cannot be divided as marital property under KRS 403.190. For several reasons we consider such reasoning, albeit traditionally accepted, to be inadequate in the present circumstances.

First, within the confines of traditional property law concepts, a spouse employed in the military, such as Robert Poe, does, at least in one sense, have a "vested" interest in the retirement plan. Upon his employment and rendition of services, Robert has a vested interest to *participate* in the plan, which if wrongfully denied by his employer would be the proper basis for a suit at law to enforce his contractual rights. *See*

*Brown v. Brown,* 15 Cal.3d 838, 126 Cal. Rptr. 633, 637, 544 P.2d 561, 565 (1976); *DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971). This interest has been described to be in the nature of a chose in action which is undeniably a property right. *Brown, supra,* 126 Cal.Rptr. at 637, 544 P.2d at 565. Thus, while Robert Poe's rights in his military pension plan may not be *fully* vested so as to inalienably entitle him to payment at some later time, he does have a vested interest in participating in the pension plan. This is a vested interest then which Joanne, through her support as homemaker and helpmate, enabled Robert to acquire and continue throughout their marriage. As *Light, supra,* at 478 notes:

Generally, anything accrued and acquired during a marriage is marital property. KRS 403.190(2). A pension is a form of deferred compensation which is earned during each day of [sic] month of military service or other work. It cannot be considered as being earned on the day it matures. The value of a pension, if any, should therefore be marital property for the portion accrued during coverture. This fact is true for any pension, whether nonvested or noncontributory.

Therefore, even were we to confine ourselves to the requirement of vesting, it would still be possible under the above logic to include within the broad definition of "property," a pension which had not wholly vested, thereby enabling it to be divided pursuant to KRS 403.190. As the concept of "property" has been defined in Kentucky common law:

The term 'property' is, in law, a generic term of extensive application. It is a term of large import, of broad and exceedingly complex meaning, of the broadest and most extensive signification, a very comprehensive word, and is the most comprehensive of all terms which can be used. The term is often called 'nomen generalissimum', and is employed to signify any valuable right or interest protected by law, and the subject matter or things in which rights or interests exist.

While some might protest this interest to be too amorphous to be considered property, we believe it to be no more "speculative" than the value of goodwill which has recently been considered an element in determining the value of marital property. *Heller v. Heller*, Ky.App., 672 S.W.2d 945 (1984).

Setting aside this approach for the moment, we turn to the courts of New Jersey, which have wisely avoided the pitfall of becoming entangled in applying ancient property law concepts to such an unusual and important marital asset. Instead, vesting as it originated in the law of future interests has been specifically held in New Jersey to have little meaning in determining the equitable distribution of the marital estate. *McGrew v. McGrew*, 151 N.J.Super. 515, 377 A.2d 697 (1977) (citing *Stern v. Stern*, 66 N.J. 340, 331 A.2d 257, 262 (1975)). With respect to vesting, the court in *McGrew, supra*, concludes that,

> While the uncertainty of enjoying benefits may be a factor to be considered in awarding distribution, the failure of the property interest to have vested in the sense essential to the alienability of real estate does not disqualify it as property acquired during the marriage for purposes of equitable distribution. Of greater importance, as the court aptly pointed out in *Blitt v. Blitt*, 139 N.J.Super. 213, 218, 353 A.2d 144, 147 (Ch.Div. 1976), is 'the nature of the interest and defendant's control over it.' Although some question exists as to when or whether the retirement benefits will be enjoyed, the consideration critical to the issue distribution is the extent to which the anticipated benefits will have been generated by the mutual effort of the parties. Thus, the court's focus must rest upon the equities which are relevant to the claims asserted upon the proceeds, when, as, and if they materialize.

*Id.* 377 A.2d 144 at 699. In *McGrew, supra*, the 58-year appellee husband, Donald McGrew, had completed some 26 years of service with his employer and was eligible for immediate retirement benefits *if* he would elect to take early retirement. However, should he continue to work and die before the age of 65 or before he exercised his early retirement option, no benefits would be paid whatsoever. *Id.* 377 A.2d at 698. Therefore, even though it could be said that Donald's interest was vested in the sense of a present entitlement to future payment of the deferred compensation represented by a pension, his interest was no less "speculative" than any other nonvested interest declared not to be marital property under Kentucky law. To our thinking, this inconsistency does much to expose the fallacy of relying upon vesting as the sole criteria for characterizing pensions.

As we analyze this problem, the "speculative" quality of the employee's right to receive payment of pension benefits, mentioned in *Ratcliff, supra*, at 293, relates not only to the constraints of the traditional definitions of property and the trial court's inability to find a "square hole for a square peg;" it is also a reference to the practical difficulties suffered by our courts early on when trying to reduce such contingent pensions to a present lump sum value. Obviously, it could not be done. More importantly, it need not be done and our courts have so much as said so. *Owens, supra*, at 69 (commenting that the circuit court has the discretion to delay division of the plan until it would otherwise be payable). Thus, a nonvested pension is not overly speculative where courts such as the Hardin Circuit Court are willing to delay the actual division of those benefits until they are capable of distribution and have in every sense of the word "vested." This type of creative distribution of the award silences any complaints concerning the speculative nature of future pension benefits. As in the present case, Joanne's entitlement to a portion of those benefits representing her marital contribution is contingent upon Robert's entitlement to those benefits. While it might be argued that such a solution unnecessarily entangles the courts in administering dissolution actions, thereby delaying the resolution of the marital conflict, we note that it would do so no more than the current application of our maintenance and child support statutes presently the courts to do so. The

alternative is to attempt to judicially apply ill-fitted statutory interpretations whose inadequacies are both patent and numerous. Were we to now unquestioningly apply *Ratcliff, supra,* or *Light, supra,* Joanne Poe would be unjustly denied recovery of her contribution to the marriage in contravention of KRS 403.190. For the sake of example only, we note that the present value of Robert's entitlement to retirement benefits (assuming he retires after 20 years service without special increases for heroism) is approximately $407,000, an amount far in excess of the value of the couple's marital property. Therefore, even if Joanne were awarded *all* the current marital property, it could not offset her interest in the future benefits under the pension, as an asset acquired during the marriage by the joint efforts of both parties. Applying *Light, supra,* is of no benefit either as Joanne simply is not entitled to maintenance given her own laudable efforts in securing employment. In short, the Hardin Circuit Court has done what was required, indeed all that was possible, to ensure a just division of marital assets. We note in this respect that federal law, 10 U.S.C. § 1408(c)(1) and (d)(2), would not prohibit the result achieved in the Hardin Circuit Court. We can find no logical or just reason to do so under present Kentucky law.

The judgment of the Hardin Circuit Court is affirmed on both the direct appeal and the cross-appeal.

Further, pursuant to 2.(a) of the Order designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure pertaining to further appellate steps, are reinstated effective the date of this opinion.

All concur.