Patrick Boyd McGINNIS, Appellant,

v.

Julie Roberts McGINNIS, Appellee.

No. 94–CA–256–MR.

Court of Appeals of Kentucky.

July 28, 1995.

Rehearing Denied Sept. 29, 1995.

Discretionary Review Denied and Case Ordered Published by Supreme Court April 17, 1996.

Mitchell A. Charney, Mary A. Maple, Mitchell A. Charney, Louisville, for Appellant.

B. Mark Mulloy, Louisville, for Appellee.

Before GARDNER, GUDGEL and HOWERTON, JJ.

GUDGEL, Judge.

This is an appeal from a judgment entered by the Jefferson Circuit Court in a marital dissolution proceeding. Appellant contends that the trial court erred by finding that certain nonvested shares of stock are marital property. Further, in a multipronged argument appellant contends that the trial court abused its discretion by awarding appellee an equitable, undivided one-half interest in certain vested shares of stock. For the reasons stated hereafter, we disagree with both contentions. Hence, we affirm.

Briefly, the record shows that the parties married in 1969 and divorced in April 1992. The issues on appeal concern the trial court's division of two categories of stock in a close-ly-held, venture capital-sponsored corporation, HealthCare Recoveries, Inc. (HRI). As part of his compensation as president of HRI, appellant is entitled to purchase certain shares of HRI common stock pursuant to a vesting schedule. The parties stipulated that as of the marital property valuation date of September 30, 1992, appellant owned 196,729 shares of vested HRI common stock, valued at $401,300, plus 77,001 shares of nonvested common stock, valued at $124,600. According to appellant, the vested and nonvested shares together constituted approximately 8.7% of HRI's issued and outstanding shares of stock.

Appellant claimed that the vested stock, but not the nonvested stock, constituted marital property. Moreover, he asserted that certain stock transfer restriction agreements between HRI and its shareholders precluded the transfer of any interest in the stock to appellee, and hence, that all interest in the stock should be awarded to him. Appellee, on the other hand, argued that the court should award her a one-half interest in all of the vested and nonvested stock, claiming that the true value of the recently-formed corporation's stock would not be realized for several years.

After a hearing the trial court found, based on its reading of *Poe v. Poe,* Ky.App., 711 S.W.2d 849 (1986), that both the vested and the nonvested stock constituted marital property. Further, the court found that although the HRI stock transfer restriction agreements did not absolutely prohibit the court's transfer of stock to appellee, "such transfer could potentially be thwarted by HRI stockholders." The court therefore concluded in pertinent part that:

[W]hile this Court finds that Julie is entitled to receive the financial benefits of this stock, this Court will not order the stock to be transferred into her name. Wherefore, this Court holds that Patrick shall retain full control over the stock, but Julie shall retain the right to receive one-half of all financial benefits of this stock.

In determining the manner and duration in which Julie is to receive these financial benefits, this Court realizes these financial interests cannot be open ended but, rather,

must involve a stated time frame. Having considered the history of this case, this Court is of the opinion that a duration of seven years is an adequate time frame for the parties to determine whether HRI will remain a closely held corporation or whether it will go public. Wherefore this Court hereby holds that Julie shall have a right to enjoy a financial interest in the stock to December 1, 2000.

During this time frame, Julie shall realize any income distribution that may result from the ownership of this stock to the extent of her one-half financial interest in said stock. (NOTE: Patrick cannot defeat any distribution being made by refusing to accept a distribution, i.e. a stock dividend.) Julie shall bear the financial costs of having the stock re-appraised and, thereafter, she shall be entitled to receive one-half interest of the stock that was vested on September 30, 1992, ninety (90%) percent of one-half interest of the stock which vested in January 1993, eighty (80%) percent of one-half interest of the stock which vested on [sic] July 1993, and seventy (70%) percent of one-half interest of the stock which vested in July 1994.

If the stock goes public before December 1, 2000, Julie shall receive an in-kind distribution of the stock. In addition, if at any time prior to December 1, 2000, Julie wishes to relinquish her entitlement to this financial interest she shall bear the financial burden of having the stock re-appraised. Further, depending upon Patrick's financial status at such time, Julie may not be able to immediately recoup the money but, rather, may be required to accept payments over a stated time frame not to exceed five (5) years.

Wherefore, although this Court thinks the financially prudent avenue for Julie to choose would be to accept a buy-out on the stock at this time, Julie has presented sufficient argument to persuade this Court to allow her to gamble on the future potential of this stock. As it is apparent, from the evidence presented at trial, there is the potential for this corporation to go public and, as such, to drastically increase its value, this Court hereby holds Julie is to receive a financial interest in, but no control over, the HRI stock.

Subsequently, in an amended judgment the court described the procedures which were to be followed if appellee wished to require appellant to purchase her interest in the stock prior to December 1, 2000, and indicated that appellant's maintenance obligation could be reviewed if appellee subsequently acquired the HRI stock or its monetary value. This appeal followed.

First, we address appellant's contention that the trial court erred by finding that the nonvested shares of stock constituted marital property. We disagree.

Appellant relies upon *Fry v. Kersey*, Ky. App., 833 S.W.2d 392 (1992), in asserting that the value of the nonvested stock was so speculative that the court erred by awarding any portion of that value to appellee. In *Fry, id.* at 393, a panel of this court cited *Ratcliff v. Ratcliff*, Ky.App., 586 S.W.2d 292 (1979), and *Foster v. Foster*, Ky.App., 589 S.W.2d 223, 224 (1979), in stating that "the operative factor in determining whether benefits under a pension plan are marital or nonmarital property in dissolution actions is whether vesting has occurred." However, in *Fry* the issue before the court was whether the appellant was entitled, pursuant to CR 60.02(f), to reopen the court's final decree and seek for the first time the division of a pension plan. The discussion regarding vested and nonvested pension plans was gratuitous dicta which was not relied upon by this court in rendering its opinion on the merits that there was no reason of an extraordinary nature which justified relief under the rule.

Thus, *Fry* has little precedential value in the instant proceeding. Moreover, a different and, we think, correct approach to the vesting issue was taken by this court when the issue was directly addressed in *Poe v. Poe*, Ky.App., 711 S.W.2d 849 (1986). The court therein noted that although traditionally it was considered that a spouse's interest in a nonvested pension plan was a mere expectancy which could not be divided as marital property unless there was some present right to either immediate or future payment, such reasoning is inadequate where an employee has "a vested interest to partici-

pate in" the employer's pension plan. *Id.* at 855. Instead, the employee's spouse in such a situation shares in the entitlement even though the pension plan's proceeds might never be enjoyed due to the employee's premature death or other such circumstances. Further, the *Poe* court, *supra* at 855, quoted with approval from *Light v. Light*, Ky.App., 599 S.W.2d 476, 478 (1980), as follows:

"Generally, anything accrued and acquired during a marriage is marital property. KRS 403.190(2). A pension is a form of deferred compensation which is earned during each day of [sic] month of military service or other work. It cannot be considered as being earned on the day it matures. The value of a pension, if any, should therefore be marital property for the portion accrued during coverture. *This fact is true for any pension, whether nonvested or noncontributory.*" (Emphasis added.)

The court then concluded that

a nonvested pension is not overly speculative where courts ... are willing to delay the actual division of those benefits until they are capable of distribution and have in every sense of the word "vested." This type of creative distribution of the award silences any complaints concerning the speculative nature of future pension benefits.... While it might be argued that such a solution unnecessarily entangles the courts in administering dissolution actions, thereby delaying the resolution of the marital conflict, we note that it would do so no more than the current application of our maintenance and child support statutes presently [sic] the courts to do so.

*Id.* at 856. *See also Glidewell v. Glidewell,* Ky.App., 859 S.W.2d 675, 678 (1993) (a pension does not lack value simply because it is nonvested, even though it cannot be divided between and awarded to the spouses at the time of the dissolution since the pensioner's interests are purely speculative).

Even though *Poe* and *Glidewell* involved pension plans rather than shares of stock, we agree with the trial court that the reasoning of those cases is persuasive. Here, as in *Poe,* the value of appellant's vested right of future participation in an employment benefit plan was a valuable deferred compensation right even though it might never be fully exercised. It follows, therefore, that the court did not err by finding that the value of appellant's accrued ownership rights in the nonvested stock constituted marital property. *See Poe, supra.*

■ Next, appellant contends in a multi-pronged argument that the trial court abused its discretion by awarding appellee an equitable, undivided one-half interest in vested HRI stock. We disagree.

Appellant argues that the court's award to appellee violated the stock transfer restriction agreements (hereinafter collectively referred to as "agreement"),[1] which restrict the transfer of shares as follows:

2.1 During the term of this Agreement, *the Employee shall not* sell, *assign,* dispose of, transfer, pledge or hypothecate *the Shares,* whether by operation of law or otherwise, *except [i] upon the Employee's death,* in which case the Employee's heir(s) shall become the owner of the Shares, *and [ii] as expressly permitted by this Agreement.* (Emphasis added.)

Moreover, Section 2.3 of the agreement permits an employee to voluntarily "sell, assign, dispose of or otherwise transfer any of the Shares" only after first satisfying certain preliminary requirements, including offering to sell those shares to HRI or, if HRI chooses not to purchase any or all of the offered shares, offering to sell the shares to HRI's preferred shareholders. Only if the shares are not purchased by HRI and/or by the preferred shareholders may the employee transfer the shares to a third party.

Similar restrictions apply to the employee's so-called "involuntary" creation of interests in HRI stock, as follows:

2.4 If the Employee files a voluntary petition in bankruptcy or a petition for the

1. Except for the substitution of the word "company" in place of the word "corporation," the July 1991 stock transfer restriction agreement is virtually identical to the previous stock transfer restriction agreements for purposes of this discussion. Quotations herein are taken from the July 1991 version of the agreement.

appointment of a receiver, or makes an assignment for the benefit of creditors, or such proceedings are filed or instituted against the Employee, of *if any person obtains an attachment or other legal or equitable interest in any of the Shares owned by the Employee,* and if in the event of any of the aforesaid involuntary acts (insofar as the employee is concerned) the same are not dismissed, nullified or removed within 60 days after institution thereof, *the Employee shall so notify the Company [HRI] and the Company shall forthwith have the right (but not the obligation) to purchase for the account of the Company of [sic] the Company's designee all of the Shares owned by such Employee at Fair Market Value in the same manner as provided for in Section 2.3 hereof. If the Company shall elect not to purchase all of such Shares, such Shares shall be offered to [preferred shareholders] Warburg and Humana in the same manner and on the same terms and conditions as provided in Section 2.3.* (Emphasis added.)

Finally, Section 2.5 provides in pertinent part that

[t]he Company may refuse for any purpose to recognize as a shareholder of the Company any transferee who receives any Shares contrary to the provisions of this Agreement, and the Company may retain and/or recover all dividends on such Shares which were paid or payable subsequent to the date on which the prohibited transfer was made or attempted.

Even assuming that the court's order creates an involuntary equitable interest in the stock as contemplated by Section 2.4 of the agreement, rather than merely maintaining the parties' existing joint marital ownership of the property, we are not persuaded that the agreement was violated. As noted above, the stock transfer restriction agreement does not prohibit all transfers of HRI stock. Not only does Section 2.1 permit stock to be inherited, but Sections 2.3 and 2.4 permit stock to be involuntarily transferred to third parties so long as the *employee* first notifies and provides HRI and/or the preferred shareholders with the opportunity to pur-

chase the stock. However, the agreement does not place the same obligation upon a court to either notify HRI and/or the preferred shareholders, or to provide them with an opportunity to ˙ purchase the stock. Hence, even if the court's order triggered the possibility that HRI and/or the preferred shareholders would purchase the HRI stock and deprive both appellant and appellee of ownership rights therein, we cannot agree with appellant's contention that the court's order violated the terms of the stock transfer restriction agreement.

■ Appellant also argues the trial court abused its discretion by awarding appellee an equitable interest in the HRI stock because the parties thereby were unnecessarily required to remain joined in a financial venture despite the potential for disagreements to arise between them regarding management of the corporation. However, unlike the circumstances involved in both the Kentucky cases and the bulk of the out-of-state cases cited by appellant, here the parties are not majority shareholders in the corporation and there is nothing to indicate that appellee either was involved in, or could assert a right to participate in any way in, the corporation's management or functioning. *See, e.g., Clark v. Clark,* Ky., 487 S.W.2d 272 (1972); *Goldstein v. Goldstein,* Ky., 377 S.W.2d 52 (1964). Indeed, not only did the vested and nonvested HRI stock together constitute less than nine percent of the total stock issued and outstanding, but here the trial court specifically directed that appellant would retain "full control over the stock." Hence, any potential right of appellee to interfere in the corporation's affairs, or to become embroiled in disputes with appellant concerning the management of the corporation, were essentially negated. We therefore cannot say, in view of the circumstances, that the trial court abused its discretion in this regard.

■ Moreover, we are not persuaded that a different result is compelled by the fact that appellant had access to sufficient funds such that the court could have instead awarded appellee the stipulated cash value of the stock as of the agreed date of valuation. This is especially true in view of the fact that evidence was adduced to show both that the

stock's full value may not be realized for several years, and that the stock transfer restriction agreements substantially reduced the likelihood that appellee would be able to retain any other type of interest in the stock which the court might have awarded to her.

Finally, appellant asserts that the trial court abused its discretion by compelling him in effect to act as a trustee for appellee regardless of whether the parties' interests coincided, by granting appellee the unilateral right to sell her interest in the stock to appellant within a seven-year period without granting reciprocal purchase rights to him, by in effect permitting appellee to control the continuation of her maintenance award during the seven-year period, and by failing to address the issue of appellant's potential tax liability regarding appellee's share of any stock distribution made to him. However, as appellant has cited us to nothing in the record and we have found nothing to demonstrate that these arguments were presented to the trial court, they cannot be raised for the first time on appeal. *See James v. Webb*, Ky.App., 827 S.W.2d 702 (1991); CR 76.12(4)(c)(iv). Hence, we will not address them.

The court's judgment is affirmed.

All concur.