**William HUTTON, Appellant,**

v.

**Erika HUTTON, Appellee.**

**No. 2002–SC–0462–DG.**

Supreme Court of Kentucky.

Oct. 23, 2003.

Robert C. Bishop, Robert C. Bishop & Associates, PLLC, Elizabethtown, Counsel for Appellant.

Erika M. Hutton, Spring Hill, FL, pro se.

Opinion of the Court by Justice JOHNSTONE.

The sole issue before the Court in this case is whether remarriage that ends in annulment terminates a former spouse's obligation to pay future maintenance, where the parties' separation agreement does not provide otherwise. We hold that it does and overrule *McCord v. McCord*, Ky.App., 558 S.W.2d 624 (1977), which holds that the issue is an equitable matter that is left to the discretion of the trial court.

### I. Facts and Procedural History

Appellee, Erika Hutton, and Appellant, William Hutton, were married about twenty-one years before their union was dissolved in February, 1991, by the entry of a divorce decree in the Hardin Circuit Court. Pursuant to the decree, Erika was awarded a percentage of William's military retirement pay according to the formula set forth in *Poe v. Poe*, Ky.App., 711 S.W.2d 849 (1986). Because William had

not yet retired at the time the decree was entered, the trial court could not fix the amount of William's retirement pay that Erika was entitled to. Additionally, the trial court awarded Erika maintenance in the amount of $800.00 per month which was to continue until her death, remarriage, or the distribution of military retirement benefits. This last termination event, however, was qualified in the decree.

The decree provided in pertinent part that

> [r]eceipt of the military retirement will be a distribution of *marital property* which would be offset dollar-for-dollar against the maintenance. Since the amount of military retirement is not known, when it is determined, the difference between the $800.00 per month and the military retirement will continue to be a maintenance obligation of the husband to the wife under the terms previously indicated.

The amount of the maintenance award was reduced to $695.00 in a subsequent court order. About a year-and-a-half later, William retired and the amount of Erika's share of his retirement could then be calculated. The trial court entered a supplemental final decree that awarded Erika 41.36% (calculated using the *Poe* formula) of William's "disposable retired or retainer pay." Applying this percentage yielded an amount of $866.00 as Erika's share of William's retirement benefits. According to the Commissioner's Report, shortly thereafter, "Erika's share of William's retirement benefits began to shrink for the reason that part of William's retirement was converted to disability through the Veterans Administration." *See Davis v. Davis,* Ky., 777 S.W.2d 230, 232 (1989). (Veterans' disability benefits that are received in lieu of military retirement pay pursuant to an election to waive retirement benefits, are non-marital property.)

Based on the reduction in her share of retirement benefits, Erika made a motion to increase William's maintenance obligation. William opposed the motion on several grounds including the argument that his obligation to pay maintenance was terminated upon Erika's subsequent remarriage. The record is not clear as to when Erika remarried or when the marriage was annulled, but there is no dispute that both the remarriage and annulment occurred sometime before the Trial Commissioner entered his report. While the Commissioner's Report recommended denying Erika's motion, it noted that under *McCord, supra,* remarriage does not absolutely terminate a former spouse's maintenance obligation when the remarriage of the party receiving maintenance is annulled. *See McCord,* 558 S.W.2d at 626. Rather, the reason that the report recommended denying the motion was that, before William's retirement pay was reduced, Erika was receiving an amount in excess of the maintenance award of $695.00 a month. The report, however, left the door open for future motions for reinstatement should conditions materially change. Upon review of the report and consideration of the exceptions to it, the trial court denied Erika's motion.

When Erika's share of William's retirement was again reduced (this time to a mere $80.50 a month), Erika renewed her motion for reinstatement of maintenance. This time the Commissioner's Report recommended that William's maintenance obligation be reinstated subject to a dollar-for-dollar reduction in the monthly amount of Erika's share of William's retirement benefits, for a total $614.50 per month. The trial court adopted the Commissioner's Report and granted the motion.

Relying on *McCord*, the Court of Appeals affirmed the trial court. We granted discretionary review and reverse.

## II. Discussion

Many jurisdictions have addressed the issue of whether maintenance or alimony may be reinstated when a subsequent marriage (remarriage) ends in an annulment, rather than by death or divorce. Louanne S. Love, *The Way We Were: Reinstatement of Alimony After Annulment of Spouse's "Remarriage"*, 28 JFAML 289 (1989/1990). As Is to be expected, the approach taken varies significantly across the various jurisdictions. *Id.* The majority allow

> reinstatement only where the second marriage was void ab initio per applicable state law and [deny] reinstatement in the case of a voidable second marriage. A significant minority of courts, however, have rejected the void/voidable distinction and refuse to allow reinstatement in either case. A few courts have criticized both of these approaches as inflexible and opt for a case-by-case approach.

*Id.*

Kentucky took the third path mentioned above when the Court of Appeals held in *McCord* "that public policy is best served when the equities in favor of either revival or preclusion of alimony are balanced against each other" in a motion to reinstate maintenance after a spouse's remarriage is annulled. *McCord*, 558 S.W.2d at 626. While this may well be the most equitable result, it conflicts with the plain meaning of KRS 403.250(2), which provides "[u]nless otherwise agreed in writing or expressly provided in the decree, *the obligation to pay future maintenance is terminated upon* the death of either party or *the remarriage of the party receiving maintenance.*" (Emphasis added). It also conflicts with the plain meaning of the

parties' separation agreement, which also expressly provided that remarriage terminated William's obligation to pay future maintenance. Therefore, we overrule *McCord* and hold that annulment of a remarriage by a party awarded maintenance in a divorce decree or separation agreement does not invest a trial court with discretion to reinstate maintenance under KRS 403.250(1).

William's motion to strike Erika's brief is hereby denied as moot.

For the reasons set forth above, we reverse the Court of Appeals and remand this case to the Hardin Circuit Court for further proceedings consistent with this opinion.

All concur.