**Colette DOTSON, Appellant/Cross-Appellee**

v.

**Darren DOTSON, Appellee/Cross-Appellant**

**NO. 2013-CA-001598-MR, NO. 2013-CA-001658-MR**

Court of Appeals of Kentucky.

JUNE 9, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Armand I. Judah, Louisville, Kentucky.

BRIEF FOR APPELLEE: Justin R. Key, Louisville, Kentucky.

BEFORE: DIXON, JONES, AND J. LAMBERT, JUDGES.

## OPINION

JONES, JUDGE:

This appeal and cross-appeal arise out of an order from the Jefferson Circuit Court classifying and dividing the parties' assets following their dissolution of marriage. Specifically, the parties take issue with the trial court's designation and division of certain stock Colette acquired as part of her employment. For the reasons more fully explained below, we affirm.

## I. BACKGROUND

Colette began working at United Parcel Service ("UPS") approximately nine years before she married Darren in 1996. During this nine-year period, Colette acquired approximately 647 shares of Class A common UPS stock. Colette maintained ownership of this stock after she married Darren. In 1999, three years into the parties' marriage, UPS's stock split. This doubled the number of Colette's pre-marital shares from 647 to 1,294.

At the time of the parties' divorce, Colette had been working for UPS for twenty-four years, during which time Colette continued to acquire and sell UPS stock. In addition to UPS's retirement savings plan and pension plan, Colette is eligible for UPS's Management Incentive Program ("MIP"). If Colette's management team recommends her for participation in the program she receives an annual award. This award is paid in the form of Restrict-

ed Performance Unit ("RPU") stocks. The MIP handbook defines RPUs as "book-keeping entries in an account set up for [the employee] representing the value of UPS Class A shares." As the program is "designed to reward long-term commitment to UPS," the stock represented by the RPUs is not immediately available to UPS employees. Rather, the RPUs are set to vest over a five-year period, and if an employee leaves UPS for any reason before the RPU vests, that employee forfeits his or her RPUs.

On June 25, 2012, Colette petitioned for divorce. On March 28, 2013, the trial court entered an order dissolving the parties' marriage, but reserved issues related to property distribution for further determination. The parties were not able to reach a mutually agreeable property settlement. As a result, the trial court conducted a hearing at which it received testimony and other evidence related to the parties' property, including their respective 401(k) accounts, pension plans, and Roth IRA accounts; division of personal property; the sale and division of equity in their two jointly-owned residences; and 2012 tax liabilities. This appeal concerns only the proper designation and division of Colette's UPS stock and RPUs.

The trial court ultimately found that all of Colette's UPS stock was marital property except for the 647 shares she owned prior to the parties' marriage. It refused to consider Colette's argument about the split on the basis that Colette did not produce any evidence "as to the date of the alleged split." Accordingly, the court restored only the 647 shares of stock to Colette as non-marital property. It classified the other shares as marital property.

The trial court also found that all the non-vested MIP incentives are marital, and therefore, subject to division if they vest in the future. It explained:

[Colette] presented evidence indicating that, in addition to her stock, she is eligible for an additional MIP incentive that enables her to obtain additional employment awards. The MIP incentive was clearly earned during the course of the marriage. The case cited by [Darren] is totally on point wherein the Court of Appeals held that "the value of appellant's vested right of future participation in an employment benefit plan was a valuable deferred compensation right even though it might never be fully exercised." *McGinnis v. McGinnis*, 920 S.W.2d 68 (Ky. App. 1995). As noted, the award has been earned during the marriage, thus it is marital. If the award never vests and/or no benefit is ever realized that does not destroy the nature of same. In the event some benefit is conferred as a result of the eligibility of [Colette] for the program, said benefit shall be divided equally, as shall the current vested stock earned through the course of the marriage.

Colette appealed the trial court's order. Darren responded by filing a cross-appeal.

## II. Scope of the Appeal

As part of the appellate process, the parties participated in a prehearing conference. While the conference did not result in a complete settlement of the issues on appeal, it was fruitful. Through that process, the parties were able to reach an agreement on the division of their pension accounts, equalization of their remaining retirement accounts, and Darren's sale of his interest in the parties' Michigan home to Colette. The agreement, which was signed by both counsel for both parties, was entered into the record by the Jefferson Circuit Court on March 4, 2014. In part, it reads as follows:

The parties, with their respective counsel, agree to settle all issues with the

exception of those not specifically addressed herein, which both parties agree would be miscellaneous personalty and reservation of UPS RPU stock.

. . . .

4. Any issues not resolved by this Agreement shall be controlled by the Court's Findings of Fact and Conclusions of Law and subsequent Order that are not inconsistent with this Agreement. The Orders shall remain in effect until further agreement of the parties or Orders of the Court.

5. The parties shall, in good faith, try to resolve the issues herein that require "paperwork" and transfer of stock, etc. by March 31, 2014.

Darren argues that Colette agreed to abide by the trial court's finding that part of the already issued UPS stock was marital property as part of the parties Post-Decree Settlement. He asserts that the plain language of the Agreement is clear on this point because it references only reservation of "UPS RPU stock" and contains a paragraph referencing the "transfer of stock." He asserts that the only stock subject to transfer was the already issued shares of UPS stock the trial court had determined to be marital property. Colette disagrees. She believes that the first paragraph is clear that the agreement pertains to the already issued shares of UPS stock as well as the RPUs.

■ "An agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). When interpreting the terms of a settlement agreement, our primary purpose is to achieve the parties' intentions. *Id.* Absent any ambiguity, "the intention of parties to a written instrument must be gathered from the four corners of that instrument." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178

(Ky. 2000). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell*, 94 S.W.3d at 385 (citing *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 905 (Ky. App. 1994)). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* (citing *Green v. McGrath*, 662 F.Supp. 337, 342 (E.D. Ky. 1986)).

Ultimately, we agree with Darren. The first paragraph of the Post-Decree Settlement Agreement references only the UPS RPU stock issue. It does not include any reference related to the already outstanding and issued shares that were split. We believe that had parties intended to reserve this issue, they would have included some mention of outstanding shares or the stock resulting from the split. They did not. The agreement states the only issue reserved concerns the UPS RPU stock. Our interpretation makes sense in light of the remaining portion of the agreement, which references a transfer of stock, which would be the case if the parties intended for a portion of that stock to be marital. As such, we will not undertake a review of the stock split issue. This leaves only the RPU issue for our determination.

### III. RPU Stock Options

■ Classifying property as marital or non-marital "involves an application of the statutory framework for equitable distribution of property upon divorce and therefore constitutes a question of law...." *Holman v. Holman*, 84 S.W.3d 903, 905 (Ky. 2002). Accordingly, we review trial court rulings regarding the classification of marital property *de novo*. *Young v. Young*, 314 S.W.3d 306, 308 (Ky. App. 2010). Once classified, the division of

marital property is within the sound discretion of the trial court. *McGregor v. McGregor*, 334 S.W.3d 113, 119 (Ky. App. 2011). "We review a trial court's determinations of value and division of marital assets for abuse of discretion." *Young*, 314 S.W.3d at 308 (citing *Armstrong v. Armstrong*, 34 S.W.3d 83, 87 (Ky. App. 2000)).

■ On appeal, Colette argues that the trial court erred in designating her unvested RPUs as marital property, as she has not yet earned, and may never earn, the stock those RPUs represent. The trial court looked to *McGinnis v. McGinnis*, in which the court held that "the value of appellant's vested right of future participation in an employment benefit plan was a valuable deferred compensation right even though it might never be fully exercised," and determined that the RPUs were in fact marital property. 920 S.W.2d 68, 71 (Ky. App. 1995). We agree with the trial court.

As a primary matter, we recognize that in an unpublished opinion, *Gallagher v. Gallagher*, No. 2012-CA-000671-MR, 2013 WL 5886028 (Ky. App. Nov. 1, 2013), a panel of this Court reached the opposite conclusion. Having closely reviewed the *Gallagher* opinion, we cannot agree with its characterization of the RPU (referred to as an RSU in *Gallagher*) as entirely speculative.

At the time it is awarded, the MIP Award is paid part in cash and part in RPUs. Unlike in *Gallagher*, it is clear from the Plan documents before us that the RPU does have a quantifiable value when it is "paid" to the employee.[1] Until full vesting occurs, the RPUs are kept in an account for the employee. While the RPUs are speculative in the sense that full vesting may never occur, for example, if the employee voluntarily leaves UPS prior to retirement, they do represent a form of bonus earned by the employee. And, the employee has a right to enforce the Plan if it is not administered according to the company's agreement. Therefore, we must conclude that an unvested RPU is more than merely a speculation. It represents an award to the employee that may be enforced by the employee in accordance with the Plan terms. *See Poe v. Poe*, 711 S.W.2d 849, 855 (Ky. App. 1986).

We believe that to the extent the RPU was "paid" during the marriage as a result of work performed by one spouse during the marriage, it should be treated as marital property. "The value of appellant's vested right of future participation in an employment benefit plan was a valuable deferred compensation right even though it might never be fully exercised. It follows, therefore, that the court did not err by finding that the value of appellant's accrued ownership rights in the nonvested stock constituted marital property." *McGinnis*, 920 S.W.2d at 71.

In sum, Colette earned the right to participate in the MIP each year. While participating in that program, she was paid RPUs. Those RPUs will vest in Colette's favor over a five-year period, at her retirement, upon her disability, or on her death. When the vested RPUs lapse, they will automatically convert to stock ownership. While it is presently uncertain if all the RPUs that were "paid" to Colette during the marriage will vest, the fact remains that Colette was awarded the unvested RPUs during her marriage. She has a right to enforce the awarded RPUs in accordance with the Plan's terms. Therefore, we must conclude that the unvested

1. "Paid" is the term used by the Plan.

RPUs that UPS "paid" to Colette during the parties' marriage are marital property. Any RPUs "paid" following dissolution would be Colette's separate property. If necessary, the trial court can delay distribution of the RPUs until vesting. *See Owens v. Owens*, 672 S.W.2d 67, 69 (Ky. App. 1984).

## IV. Conclusion

For the above stated reasons, we affirm the Jefferson Circuit Court.

ALL CONCUR.