Kathy Joan COPAS, Appellant/Cross–
Appellee,

v.

Richard Dale COPAS, Appellee/Cross–
Appellant.

Nos. 2009–CA–000685–MR,
2009–CA–000720–MR.

Court of Appeals of Kentucky.

Feb. 3, 2012.

Bryan Gowin, Louisville, KY, for appellant/cross-appellee.

Jack W. Flynn, Frankfort, KY, for appellee and cross-appellant.

Before ACREE, MOORE and NICKELL, Judges.

## OPINION

ACREE, Judge:

This opinion addresses the combined appeal and cross-appeal from orders of the Shelby Family Court modifying the division of Appellee/Cross–Appellant Richard Copas's military retired pay between Richard and his former spouse, Appellant/Cross–Appellee Kathy Copas. There are three issues before us. First, did the family court abuse its discretion in utilizing Kentucky Rules of Civil Procedure (CR) 60.02(f) to reopen the order dividing the parties' marital property? Second, did the family court abuse its discretion in modifying the language in a previous order concerning the division of Richard's military retired pay? And third, did the family court abuse its discretion in granting Kathy's CR 59.05 motion by adding language to the order which, in effect, designated Richard's disability benefits as marital property and then dividing it between the parties? With regard to the first two questions, we find no abuse of discretion. However, we find the family court did abuse its discretion as to the last issue. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### Facts and Procedure

On February 22, 1995, Kathy filed a petition in Shelby Family Court to dissolve her marriage to Richard. On June 18, 1997, the family court entered a limited decree dissolving the twenty-five-year marriage, but reserving judgment on all property issues, including those related to Richard's military retired pay. The court referred the division of marital property issues, *inter alia*, to the Shelby County Domestic Relations Commissioner (DRC).

On May 21, 1998, the DRC submitted to the court Findings of Fact, Conclusions of Law, and Recommendations. Richard served a total of thirty (30) years in the military and earned the right to military retired pay based on thirty years of service. The DRC found that Richard "accumulated credit for 21 years and 9 months of service during the marriage toward that pension [1] [and] the accumulation during

---

1. The proper designation of this asset is "military retired pay." It is paid from the Department of Defense Military Retirement Fund, 10 United States Code (USC) § 1461, to eligible service members who retire from active duty following a minimum of twenty (20) years of service, as in Richard's case, in the United States Army.

 [M]ilitary retired pay differs in some significant respects from a typical pension or retirement plan. The retire[e] remains a member of the Army ... and continues to be subject to the Uniform Code of Military Justice.... In addition, he may forfeit all or part of his retired pay if he engages in certain activities. Finally, the retire[e] remains subject to recall to active duty by the Secretary of the Army 'at any time.'
 *McCarty v. McCarty*, 453 U.S. 210, 221–22, 101 S.Ct. 2728, 2735–36, 69 L.Ed.2d 589

the marriage of [this asset is] marital property." As a result, the DRC recommended "the amount of Richard Copas's military pension pay attributable to the marriage (21 years and 9 months)" be divided equally between Kathy and Richard. On June 3, 1998, the DRC filed amended Findings of Fact, Conclusions of Law and Recommendations, but did not alter its original findings and recommendation concerning Richard's military retired pay. Each party promptly filed exceptions. On September 28, 1999, the family court overruled the parties' exceptions and adopted *in toto*[2] the DRC's Amended Findings, Conclusions, and Recommendations (hereinafter, "1999 Property Order").

Thereafter, the parties appeared before the family court for a hearing on supplemental exceptions and remaining issues concerning costs and attorney's fees. On November 6, 2000, the family court entered an order resolving all outstanding issues. In its order, the family court referenced Richard's military retired pay, stating, in pertinent part, that the parties agreed that Richard "would do all that is necessary to insure [Kathy] would receive full military benefits to which she may appear entitled, including fifty percent (50%) of [Richard's] pension as ordered [sic] in the [DRC's] Findings of Fact and Conclusions of Law, and Recommendations adopted by this Court."

The circuit court record reveals no further activity for almost six years. Howev-er, on June 14, 2001, years before Richard retired from the military and therefore prior to his receipt of any military retired pay, Kathy had submitted to the Defense Finance and Accounting Service (DFAS), the agency charged with administering and distributing military retired pay, a Department of Defense (DoD) Form 2293, entitled "Application for Former Spouse Payments from Retired Pay." Kathy completed the form which, in pertinent part, states:

> I request payment of: ... a division of property in the amount of $ _____, or **50** percent of disposable retired pay per month.

(Emphasis reflects the blank filled in by Kathy).

In April 2007, Richard retired from active military service.

We pause here to emphasize the effect Kathy's submission of Form 2293 had on the distribution of Richard's military retired pay. When Richard finally retired, DFAS calculated his military retired pay based on 30 years, or 360 months of military service. When Kathy completed Form 2293, she was claiming "50 percent" of the military retired pay Richard earned over the entire 360 months.[3] However, the circuit court's order only allowed her to claim 50 percent of Richard's military retired pay attributable to the marriage— that is, 261 months worth (21 years, 9 months, as determined by the circuit court). Her completion of the form as she

(1981) (citations and footnotes omitted) (*superseded on other grounds by* the "Uniformed Services Former Spouses Protection Act"; the key provision removing federal preemption in the area of military retirement benefits can be found in 10 U.S.C. § 1408(c)(1)). We use the term "pension" when quoting the family court; otherwise, we will refer to "military retired pay" with the understanding that, for purposes of this opinion, they are synonymous.

2. There is one minor exception to the family court's embrace of the recommendations not relevant here.

3. There is no reason to believe Kathy intended to mislead the DFAS. DFAS requires, and Kathy provided, a copy of the court's order. We consider the DFAS's misinterpretation of the court's order simply a foible of administrative bureaucracy.

did disregarded the court's distinction between the marital and nonmarital portions of Richard's military retired pay. The effect is that Kathy claimed, and the DFAS awarded to her, 50 percent of the retired pay Richard earned during the 99 months he served in the military while not married to Kathy—a nonmarital asset to which Kathy was not entitled.

When Richard retired he had earned the right to claim total military retired pay of $4,400.00 per month. Based upon the form Kathy submitted in 2001, DFAS began paying her fifty percent of Richard's total military retired pay, so that both Kathy and Richard began receiving monthly checks in the amount of $2,200.00. Upon retirement, Richard also sought military disability benefits and the Department of Veteran Affairs (VA) determined Richard was forty percent disabled. As a result, he was eligible to receive disability benefits in the amount of $568.00 per month. In accordance with federal regulations, DFAS offset Richard's military retired pay by his disability benefits, reducing his total, non-disability-based military retired pay from $4,400.00 to $3,832.00. DFAS continued to pay Kathy fifty percent of Richard's total disposable military retired pay, or approximately $1,916.00 per month.

On July 17, 2007, Richard filed a motion asking the family court to direct DFAS to only pay Kathy fifty percent of the portion of his disposable military retired pay attributable to the marriage (21 years, 9 months). On July 2, 2008, the family court held a hearing on Richard's motion,[4] and on November 17, 2008, entered an order directing DFAS to distribute Richard's military retired pay as follows:

> The former spouse, Kathy Joan Copas, is awarded 50% of the disposable military retired pay the member [Richard] would have received had the member become eligible to receive retired pay on December 31, 1994, with the rank of SFC/E7, and with 21 years 9 months of service for basic pay purposes.

On November 26, 2008, Kathy filed a motion pursuant to CR 59.05 to alter, amend, or vacate the November 17, 2008 order on the grounds that the family court improperly modified the 1999 Property Order concerning the division of Richard's military retired pay. Kathy also filed a motion requesting a new trial under CR 59.01 and a motion for additional findings under CR 52.02. With respect to Kathy's CR 59.05 motion, Kathy asked the family court to amend its November 17, 2008 order to, *inter alia*, require DFAS to take Richard's disability income into account when dividing Richard's military retired pay.

The family court held a hearing on January 6, 2009, to address Kathy's motions. On March 11, 2009, the family court denied Kathy's CR 59.01 and CR 52.02 motions, but granted, in part, Kathy's CR 59.05 motion. In particular, the court altered its November 17, 2008 order to read as follows:

> The former spouse, Kathy Joan Copas, is awarded 50% of the disposable military retired pay the member [Richard] would have received had the member become eligible to receive retired pay on June 18, 1997, with the rank of SFC/E7

4. During the July 2, 2008 hearing, the family court made handwritten notes on the case's docket sheet. Additionally, at the conclusion of the July 2, 2008 hearing, the family court expressed oral conclusions and asked Richard's attorney to tender an order reflecting those conclusions. As a result of the family court's handwritten notations and oral conclusions, Kathy filed a notice of appeal with this Court on July 31, 2008. On October 14, 2008, this Court dismissed Kathy's appeal as interlocutory. *See Copas v. Copas*, 2008–CA–001468–MR (Ky.App.2008).

and with 21 years 9 months of service for basic pay purposes.

The [DFAS] Office is further directed to take into consideration in its computation the disability of the Respondent which existed during the marriage relationship with the date of marriage of June 17, 1972 and Divorce Decree entered June 18, 1997.

Kathy promptly filed an appeal challenging the family court's authority to reopen and modify the 1999 Property Order with respect to Richard's military retired pay. Richard filed a cross-appeal, claiming the family court improperly added additional language requiring DFAS to take into consideration his disability benefits in dividing his military retired pay. We address each party's arguments in turn.

### Standard of Review

■ The decision to grant or deny a motion under CR 60.02 or CR 59.05 rests within the trial judge's sound discretion. *See Schott v. Citizens Fidelity Bank & Trust Co.,* 692 S.W.2d 810, 814 (Ky.App. 1985). Accordingly, we apply an abuse of discretion standard of review to a family court's rulings on CR 59.05 and CR 60.02 motions. *Bowling v. Kentucky Dept. of Corrections,* 301 S.W.3d 478, 483 (Ky. 2009); *Bethlehem Minerals Co. v. Church and Mullins Corp.,* 887 S.W.2d 327, 329 (Ky.1994). The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

### Division of Richard's Military Retired Pay

■ Kathy asserts the family court abused its discretion in reopening the 1999 Property Order pursuant to CR 60.02(f). In particular, Kathy argues Richard failed to present any reason justifying extraordinary relief which would authorize the family court to reopen the 1999 Property Order under CR 60.02(f).

In response, Richard first contends his July 2007 motion, which failed to designate under which rule it was seeking relief, was not a CR 60.02(f) motion, but a motion to enforce the 1999 Property Order under CR 69.02. In the alternative, Richard asserts CR 60.02(f) is a proper method to reopen the 1999 Property Order because Kathy was unjustly receiving fifty percent of Richard's total disposable military retired pay instead of the portion of Richard's disposable military retired pay attributable to the marriage. As a result, Richard argues, Kathy's receipt of a benefit which was never intended by the family court constitutes an extraordinary reason authorizing the family court to reopen the 1999 Property Order pursuant to CR 60.02(f).

■ A judgment dividing marital property "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Kentucky Revised Statutes (KRS) 403.250(1); *see also Burke v. Sexton,* 814 S.W.2d 290, 291 (Ky.App.1991). A trial court's jurisdiction to modify a judgment expires ten days from the date the final order was entered by the court. *See* CR 59.05; *Yocum v. Oney,* 532 S.W.2d 15, 16 (Ky.1975); *James v. Hillerich & Bradsby Co.,* 299 S.W.2d 92, 94 (Ky.1957). Therefore, in order for a court to modify a judgment dividing marital property after ten days from the date the final order was entered, a party must allege grounds to reopen the judgment or order under CR 60.02. *Fry v. Kersey,* 833 S.W.2d 392, 394 (Ky.App.1992).

The family court did not specify in its November 17, 2008 order under which rule

it was modifying the 1999 Property Order. However, we elect to treat Richard's undesignated motion, and the family court's corresponding order, as brought pursuant to CR 60.02.[5]

■ Relief pursuant to CR 60.02 is an extraordinary remedy which should be cautiously granted. *Baze v. Commonwealth,* 276 S.W.3d 761, 765 (Ky.2008); *Brozowski v. Johnson,* 179 S.W.3d 261, 263 (Ky.App.2005). CR 60.02's residual clause, sub-section (f), authorizes a court to set aside a judgment for "reason[s] of an extraordinary nature justifying relief." CR 60.02(f); *Fry,* 833 S.W.2d at 394. "Relief under CR 60.02(f) is available where a clear showing of extraordinary and compelling equities is made." *Commonwealth v. Bustamonte,* 140 S.W.3d 581, 583 (Ky. App.2004) (quoting *Bishir v. Bishir,* 698 S.W.2d 823, 826 (Ky.1985)). Kathy contends, and Richard does not dispute, that subsection (f) of CR 60.02 is the only subsection under which Richard could have brought his motion.

In *Snodgrass v. Snodgrass,* 297 S.W.3d 878 (Ky.App.2009), a case with facts notably similar to those *sub judice,* this Court determined that CR 60.02(f) is an appropriate vehicle by which a court may modify a property order which failed to use language sufficient to convey to DFAS the court's intent, and which thereby resulted in an erroneous interpretation of the order dividing marital property. *Id.* at 886–91. As in *Snodgrass,* the information provided to DFAS was not complete and did not conform to the template for court orders later developed by DFAS. *See id.* at 890 n. 16 (referencing DFAS pamphlet, *Uniformed Services Former Spouses' Protection Act, Dividing Military Retired Pay* ). As a consequence, DFAS paid Kathy a greater proportion of Richard's military retired pay than that to which she was entitled. We find DFAS's misinterpretation of the 1999 Property Order a sufficient basis for granting CR 60.02(f) relief to allow the family court to adjust the order's language to meet DFAS's specific requirements.

Kathy next argues that, if the family court properly granted CR 60.02(f) relief, it nonetheless abused its discretion in modifying the 1999 Property Order's clear and unambiguous language concerning the division of Richard's military retired pay. Particularly, Kathy contends that, pursuant to the 1999 Property Order, she is entitled to fifty percent of Richard's total military retired pay calculated at the time he retired. As a result, Kathy argues, the family court's November 17, 2008 order improperly modifies the 1999 Property Order.

In response, Richard contends the family court intended to grant Kathy fifty percent of his retirement benefit that he had earned up to the point of divorce, but not what he earned after the divorce. As a result, Richard argues, the family court's November 17, 2008 order properly clarified the 1999 Property Order by reducing

---

**5.** We believe Richard's motion could also have been brought pursuant to CR 60.01. *See Brosick v. Brosick,* 974 S.W.2d 498, 504 (Ky. App.1998) (concluding that CR 60.01 permits a court to correct a clerical mistake in a Qualified Domestic Relations Order that fails to use the precise language required by the retirement plan administrator). However, we elect to follow established precedent authorizing a party to modify an order dividing marital property pursuant to CR 60.02(f). *See Bishir v. Bishir,* 698 S.W.2d 823, 825 (Ky. 1985) (indicating a trial court may reopen a divorce decree pursuant to CR 60.02(f)); *Snodgrass v. Snodgrass,* 297 S.W.3d 878, 884 (Ky.App.2009); *Fry v. Kersey,* 833 S.W.2d 392 (Ky.App.1992) (noting CR 60.02(f) may be a proper vehicle for reopening a divorce decree).

it to language acceptable by DFAS. Richard's argument is sound and we agree.

As noted, Kathy and, in turn, DFAS, interpreted the 1999 Property Order to mean that she is entitled to fifty percent of Richard's total disposable military retired pay. Kathy's and DFAS's interpretation, however, is clearly contrary to Kentucky law because Kathy is not permitted to share in the nonmarital portion of Richard's military retired pay. While "military retirement pay is to be treated as marital property[,]" *Poe v. Poe*, 711 S.W.2d 849, 853 (Ky.App.1986), in *Foster v. Foster* this Court held that the non-retired payer spouse was "not entitled to share in any retired pay benefits earned after divorce and before retirement[.]" *Foster v. Foster*, 589 S.W.2d 223, 225 (Ky.App.1979). The "value of the retired pay, if any, should therefore be marital property [only] for the portion accrued" during the marriage. *McGinnis v. McGinnis*, 920 S.W.2d 68, 71 (Ky.App.1995) (quoting *Poe*, 711 S.W.2d at 855). Because we presume the family court intended to follow the law, *see Hilen v. Hays*, 673 S.W.2d 713, 717 (Ky. 1984), the interpretation propounded by Kathy and followed by DFAS is untenable.[6]

It is clear to this Court that by limiting Kathy's share to the portion of Richard's military retired pay attributable to the marriage (not 360 month's worth, but 261 month's worth), the family court presumed the DFAS would award Kathy only her half of the marital portion of the military retired pay. However, the DFAS could not, or at least did not, find in the order all the information it needed to properly calculate the award consistent with the family court's intent. *See Dividing Military Retired Pay*, p. 6 ("[I]n order for the award [of military retired pay] to be enforceable under the USFSPA [Uniformed Services Former Spouses' Protection Act, 10 United States Code (U.S.C.) § 1408], it [the property division order] must be expressed in a manner consistent with the USFSPA and the court order must provide us with all the information necessary to compute the award.").

The court's November 17, 2008 order merely corrected the family court's error by using language acceptable by DFAS. *See Akers v. Stephenson*, 469 S.W.2d 704, 706 (Ky.1970) (noting a court retains the authority "to enforce its own judgments and remove any obstructions to such enforcement"). That November 17, 2008 order utilized the precise language urged by DFAS in its pamphlet, *Dividing Military Retired Pay*. As in *Snodgrass*, that pamphlet was not available when the family court entered the 1999 Property Order; if it had been, the error occurring in this case might have been avoided. We find the family court did not abuse its discretion in modifying the language of the 1999 Property Order pursuant to CR 60.02(f). We affirm the family court on this issue.

### *Disability Benefits*

In his cross-appeal, Richard objects to Kathy's attempt to modify the 1999 Property Order by adding language requiring DFAS to take into account Richard's disability pay when dividing Richard's military retired pay.[7] Richard notes

---

**6.** For a fuller explanation of DFAS efforts to cooperate with state family courts, and a discussion of the proper methods and formulae for calculating a division of military retired pay satisfactory to DFAS, see *Snodgrass*.

**7.** In his brief, Richard argues the family court abused its discretion in granting Kathy's oral CR 60.01 motion to modify all prior orders to reflect additional language respecting Richard's disability. A careful review of the record reveals Kathy's oral CR 60.01 motion did not address Richard's disability, but instead

the record is devoid of any reference to his potential disability benefits in the 1999 Property Order. As a result, Richard argues, the family court erred in adding language requiring DFAS to take his disability payments into consideration and divide his disability benefits between the parties.

As noted, after the family court entered its November 17, 2008 order granting relief pursuant to CR 60.02(f), Kathy filed a timely CR 59.05 motion. Kathy objected to the phrase "disposable military retired pay," claiming the word "disposable" reduced her share of Richard's military retired pay because Richard received disability payments which were excluded from and reduced his available military retired pay. The family court granted Kathy's CR 59.05 motion, adding the following language to its November 17, 2008 order: "The [DFAS] Office is further directed to take into consideration in its computation the disability of the Respondent which existed during the marriage relationship with the date of marriage of June 17, 1972 and Divorce Decree entered June 18, 1997." It is this language to which Richard objects.

In *Snodgrass v. Snodgrass*, 297 S.W.3d 878, we explained that:

Military retired pay is distributed to former spouses of military members in accordance with the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 United States Code (U.S.C.) § 1408. "Disposable retired or retainer pay," as defined in 10 U.S.C. § 1408, is simply the retired pay the Defense Fi-

nance and Accounting Service (DFAS) sends to the retiree after the government deducts: (A) what was previously overpaid by the government to the retiree while a service member, (B) forfeitures resulting from military discipline, (C) *portions of the retired pay attributable to disability payments to the service member who retires for reasons of physical disability,* and (D) annuities set up by the service member for the benefit of his spouse or children. 10 U.S.C. § 1408(a)(4)(A)–(D). *The wording of the federal statutes themselves assures that DFAS will make the distribution only from the disposable retired or retainer pay.*

*Id.* at 882, n. 6 (emphasis supplied). In other words, disability payments are deducted from the retiree's gross military retired pay, resulting in the retiree's "disposable retired ... pay." *See id.; see also* 10 U.S.C. § 1408(a)(4). Because the retiree's disposable retired pay is lower when he or she receives disability payments, the retiree's former spouse's portion of the retiree's retired pay is also reduced.

We are cognizant of the potential inequities which may result when a retiree elects to receive disability payments, thereby reducing the net amount of retired pay the retiree's former spouse receives.[8] Nonetheless, the current state of the law, both federal and in this Commonwealth, clearly prohibits a court from treating a retiree's disability payments as marital property. *Davis v. Davis*, 777 S.W.2d 230, 232 (Ky.

---

challenged the use of the parties' date of separation—December 4, 1994—instead of the date of divorce—June 18, 1997—to calculate Richard's military retired pay. Nonetheless, because Kathy raised the issue of Richard's disability in her CR 59.05 motion and the family court granted Kathy's motion, we will address Richard's cross-appeal.

8. Best practices may call for the parties, or the court, to include in the divorce decree a provision specifically providing that it may be reopened in the event the retired payer spouse elects to receive disability benefits or, in the alternative, an election of spousal support in lieu of benefits. 16 L. Graham & J. Keller, *Kentucky Practice: Domestic Relations Law* § 15:43 (2003).

1989). As explained by our Supreme Court:

> In *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (decided May 30, 1989), the United States Supreme Court held that veterans' disability benefits were *not* subject to division as marital property in a divorce proceeding even though the veteran had simply elected to receive the disability benefits in lieu of regular retirement benefits which would have been subject to division as marital property.... [A]fter much consideration, we hold that pursuant to 10 U.S.C. § 1408(a)(4) ... VA benefits received in lieu of military retirement pay, are specifically excluded from division as marital property.

*Davis,* 777 S.W.2d at 230, 232 (emphasis supplied); *see also West v. West,* 736 S.W.2d 31, 32 (Ky.App.1987) (finding 10 U.S.C. § 1408(a)(4) statutorily exempts disability pay from division as marital property).

"[T]he defined term—'disposable retired or retainer pay' is used in § 1408(c)(1) to limit specifically and plainly the extent to which state courts may treat military retirement pay as [marital] property." *Mansell,* 490 U.S. at 590, 109 S.Ct. at 2029. By adding language requiring DFAS to take Richard's disability income into consideration in dividing his retired military pay, the family court is, in essence, requesting that DFAS ignore the "disposable" qualifier to the retired pay amount. *See* 10 U.S.C. § 1408(a)(4) (defining disposable retired pay as a retiree's gross retired pay less disability payments). Stated differently, by requiring DFAS to take Richard's disability benefits into consideration in dividing his military retired pay, the family court is converting Richard's disability benefits from nonmarital property into marital property in violation of federal law. *Mansell,* 490 U.S. at 594–

5, 109 S.Ct. at 2032 (holding the Uniformed Services Former Spouses' Protection Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits"); *Davis,* 777 S.W.2d at 230 (holding that, pursuant to *Mansell* and 10 U.S.C. § 1408(a)(4), disability benefits are the retired payer's nonmarital property and may not be divided as marital property). Consequently, the family court erred by adding language requiring DFAS to take Richard's disability payments into consideration in dividing his military retired pay.

Further, though the 1999 Property Order did not include the word "disposable," it was presumed in the 1999 Property Order because, as explained, federal law only authorizes DFAS to distribute disposable income. 10 U.S.C. § 1408(a)(4); *Dividing Military Retired Pay,* p. 6 ("Since the United States Supreme Court has ruled that Congress authorized the division of only disposable retired pay, not gross retired pay, the regulation [Department of Defense Financial Management Regulation, Vol. 7B, Paragraph 290606] provides that all percentage awards are to be construed as percentage of disposable retired pay.").

■ The fact is that beginning with the 1999 Property Order, Kathy has only received a portion of Richard's *disposable* retired pay. Kathy acknowledged this very fact when she used Form 2293 to claim and obtain "50 percent of [Richard's] *disposable* retired pay per month." Brief for Appellant, App. 4 (emphasis supplied). Effectively, Kathy's goal in bringing her CR 59.05 motion was to eradicate the impact of the federal law that limits the division of retired pay to that which is "disposable" as that term is defined by the same federal law. That was not possible

in 1999 nor was it possible when she filed her motion. Furthermore, while a CR 59.05 motion may be used to challenge a CR 60.02(f) order, it may not be used to collaterally attack the original judgment, *see Kentucky Farm Bureau Ins. Co. v. Gearhart*, 853 S.W.2d 907, 910 (Ky.App. 1993), which in this case implicitly and by law divided Richard's "disposable retired pay" only. Accordingly, we vacate this portion of the family court's order.

### Conclusion

The Shelby Family Court did not abuse its discretion in reopening and modifying the 1999 Property Order pursuant to CR 60.02(f). However, the family court did abuse its discretion by requiring DFAS to take into consideration Richard's disability payments in dividing his military retired pay. Accordingly, we affirm in part, reverse in part, and remand for additional proceedings consistent with this opinion.

ALL CONCUR.

