RENDERED:  OCTOBER 13, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1522-MR

MICHAEL DWAYNE GREGORY                      APPELLANT


v.               APPEAL FROM WHITLEY CIRCUIT COURT
HONORABLE PAUL K. WINCHESTER, JUDGE
ACTION NO. 00-CI-00245


BRENDA LOGAN                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE:  Appellant Michael Dwayne Gregory ("Michael") appeals

the Whitley Circuit Court orders denying his motions to amend post-dissolution

orders modifying the portion of a divorce decree that distributed his pension.

Finding no error or abuse, we affirm.

# I.    FACTS AND BACKGROUND

Michael and Appellee Brenda Logan ("Brenda") were married in 1988, and on October 26, 2000, the Whitley Circuit Court entered the Decree of Dissolution ending their marriage. The Decree of Dissolution, in pertinent part, read

> [Michael and Brenda] further agreed that a QDRO [Qualified Domestic Relation Order] would be entered awarding Brenda one-half (1/2) of the value of all of Michael's pensions, retirement plans or thrift plans with FCI [Federal Correctional Institution] valued as of the date of entry of the Decree of Dissolution herein.

In 2001, pursuant to the Decree of Dissolution, Brenda tendered two Court Orders Acceptable for Processing ("COAP")[1] that were subsequently entered by the court on November 13, 2001: the "2001 Pension COAP" and the "2001 TSP COAP." The TSP is not in dispute; Michael's Federal Employees Retirement System ("FERS") pension[2] is the source of this appeal.

The 2001 Pension COAP awarded Brenda a surviving spouse annuity and stated, "This Order assigns to [Brenda] **Fifty Percent (50%)** of [Michael's]

---

[1] Although the Decree of Dissolution refers to a QDRO, the orders in question are actually titled COAPs, but here, for our purposes, the title discrepancy is a difference without a distinction.

[2] A pension is a *defined-benefit* plan "in which an employer commits to paying an employee a specific benefit for life beginning at retirement." BLACK'S LAW DICTIONARY (11th ed. 2019). A basic annuity – for a FERS pension – is computed based on an employee's highest average basic pay earned during any three consecutive years of service ("high-3"), typically, the final three years of service. *See Computation*, U.S. OFFICE OF PERSONNEL MANAGEMENT, https://www.opm.gov/retirement-center/fers-information/computation (last visited Oct. 9, 2023).

Accrued Benefit under the Plan as of **October 26, 2000**." This order did not clarify if October 26, 2000, would be (a) the cutoff date for the *length of time* Brenda would be credited, (b) the cutoff date *for the contributions added* to the pension, or (c) both.

On November 29, 2001, Michael filed a motion to alter or amend the 2001 Pension COAP pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02 to clarify Brenda's share of his future pension benefit ("2001 CR 60.02 Motion"). Michael stated in this motion that when a copy of the 2001 Pension COAP was sent to his employer, the paymaster questioned its interpretation. The 2001 CR 60.02 Motion only challenged the verbiage in the 2001 Pension COAP that described Brenda's share of Michael's pension. This motion did not challenge the surviving spouse annuity clause in the 2001 Pension COAP.

In December 2001, the court entered an order that expounded upon the parties' intent within the 2001 Pension COAP ("December 2001 Order"). This December 2001 Order, which was subsequently sent to Michael's employer, stated:

> IT IS HEREBY ORDERED that the [2001 Pension COAP] were intended to divide [Michael's Pension] with 50% to [Brenda] valued only as of the date of entry of the Decree of Dissolution herein, October 26, 2000, with whatever interest or gains are attributable thereto. IT IS FURTHER ORDERED that the [2001 Pension COAP] were not intended to award [Brenda] any contributions

made to these pensions by [Michael] or his employer after October 26, 2000.

On February 25, 2002, the Office of Personnel Management ("OPM"), the administrator of Michael's FERS retirement plan, sent a letter to Brenda rejecting the 2001 Pension COAP. The letter stated the COAP did not meet requirements mandated by the Code of Federal Regulations because the order needed to include an explicit beginning date in order to compute Brenda's share of the annuity. On March 15, 2002, Brenda moved for entry of a revised COAP "to clarify that [Brenda] is receiving only the portion of the annuity pension earned during the marriage and as of October 26, 2000." On April 8, 2002, the court entered the revised pension COAP ("2002 Pension COAP"). Michael later stated he did not receive a copy of the motion to enter this 2002 Pension COAP nor a copy of the order after the court entered it;[3] Brenda stated that a copy of the motion was sent to Michael's then-attorney, and the order itself indicated a copy was sent to Michael's then-attorney after the clerk entered it.

This 2002 Pension COAP again awarded Brenda a survivor annuity, but more importantly, substantively changed (from the December 2001 Order) how Brenda's portion of Michael's FERS pension would be calculated. While the

---

[3] Michael's 2002 attorney submitted an affidavit in 2018 stating that he did not receive notice of the motion to enter the 2002 Pension COAP nor a copy of the 2002 Pension COAP (after it was entered) until February 2018.

December 2001 Order stated that the parties did not intend to award Brenda any contributions made to the pensions by Michael or his employer after October 26, 2000, the 2002 Pension COAP stated that Brenda's share would be calculated using Michael's "gross monthly annuity" at the time of retirement. The 2002 Pension COAP read, in relevant part:

> This Order assigns to [Brenda] Fifty Percent (50%) of the marital portion of [Michael's] monthly annuity determined as of the date of [Michael's] retirement. For purpose[s] of calculating [Brenda's] share of [Michael's] Benefit the marital portion of [Michael's] monthly annuity shall be determined by multiplying [Michael's] gross monthly annuity by a fraction the numerator of which is the total number of months of creditable service earned by [Michael] during the marriage (from July 12, 1988, the date of the marriage, until October 26, 2000, the date of the divorce), the denominator of which is the total number of months of [Michael's] creditable service accrued under [FERS] (including military service credited to the FERS should [Michael] opt out of receiving his military retainer pay.) The marriage began on July 12, 1988.

In June 2017, Michael retired from federal service. In January 2018, Brenda and Michael each received a letter from the OPM explaining the calculations for Brenda's share of Michael's FERS pension, which was consistent with the 2002 Pension COAP. In February 2018, more than 15 years after the entry of the 2002 Pension COAP, Michael filed a motion for clarification and repayment of overpayment and a motion to redocket. These motions were not

made pursuant to any rule, but the parties and court treated them as CR 60.02 motions to alter or amend the 2002 Pension COAP ("2018 CR 60.02 Motion").[4]

First, Michael argued he did not have notice of the 2002 Pension COAP. Second, he argued the 2002 Pension COAP improperly calculated Brenda's award of Michael's FERS pension using the *total* contributions into the pension at the date of his *retirement*, instead of the date of the divorce (thereby improperly including in her portion his increased earnings post-divorce). Michael essentially argued that his FERS pension should be treated similarly to a military pension in that the non-military spouse pension award should be assessed both (a) with only the months of the military service occurring during the marriage, *and* (b) as of the date of divorce (*i.e.*, not accounting for any increase in rank or salary that occurred after the date of the divorce). Third, Michael argued that the 2002 Pension COAP added survivorship rights to Brenda that were not discussed in the original Decree of Dissolution.

In response, Brenda argued that she and the court had sent Michael's then-attorney copies of the motion and order in 2002.[5] Next, Brenda argued that

---

[4] Likewise, the parties and court treated Michael's response to Brenda's Verified Motion to Overrule Motion for Repayment and Motion for Attorney Fees filed in March 2018 as a CR 60.02 motion to amend.

[5] The last page of the 2002 Pension COAP includes a distribution list. On that list, Michael's then-attorney has a handwritten checkmark next to his name, and the clerk initialed and dated the distribution list.

although her portion of the pension was assessed at the date of Michael's retirement (and reflected the pension value at that time), her allocation calculation was correct because it limited her award to only 50% of the marital portion (*i.e.*, the number of months of creditable service earned by Michael during the marriage). Finally, Brenda pointed out that Michael's challenge to the survivorship annuity was not timely because the same language was in the 2001 Pension COAP, and he did not object to it in his 2001 CR 60.02 Motion.

On February 28, 2020, the court entered an order ("February 2020 Order") that detailed the pension allocation as implemented pursuant to the 2002 Pension COAP. Brenda's award included 18.01% (50% of 125 months of service during the marriage divided by 347 months of Michael's total federal service) of Michael's gross annuity benefit. Brenda's award included contributions made by Michael and his employer after the date of dissolution, up and until his retirement. Also, Brenda's 125 months of service credit included 24 months of Michael's military service earned during the marriage, but not the 24 months of military service earned before the marriage. As a result, Brenda's share amounted to 18.01% of Michael's gross annuity of $3,307.00, or $595.59 per month.[6]

---

[6] Brenda's half of the cost of the survivorship annuity further reduced Brenda's monthly share to $553.59 per month.

The February 2020 Order found that Michael *did* have legal notice of the 2002 Pension COAP, and, as a result, his arguments challenging the pension allocation within the 2002 Pension COAP were not timely. Also, the court noted that the survivorship rights were clearly stated in the 2001 Pension COAP (and 2002 Pension COAP) and "[w]hen [Michael] objected to the wording of the [2001 Pension COAP] he had no objection to [that survivorship] provision[;] . . . he should have filed a Motion in 2002." As such, the court determined that he waived the objection to the survivorship annuity. Additionally, the court determined that the pension allocation was not unfair and there existed no grounds for equitable relief under CR 60.02.

Ten days later, on March 9, 2020, Michael timely filed a CR 59.05 motion to alter, amend, or vacate the February 2020 Order and a new CR 60.02 motion challenging the legal validity of the 2002 QDRO (collectively, "2020 CR 60.02 Motion"). In this 2020 CR 60.02 Motion, Michael repeated his contention that he did not have notice of the 2020 Pension COAP and Brenda "should not be awarded [overpayment] due to the court being misled to enter an Order in which opposing counsel was never provided a copy."

The court allowed discovery, depositions, and mediation to take place, but the parties could not reach an agreement. In September 2022, Brenda filed a motion for the court to rule without a final hearing as there existed no legal

grounds to alter, amend, or vacate the February 2020 Order nor the 2002 Pension

COAP. In November 2022, without a final hearing, the court entered an order

denying Michael's 2020 CR 60.02 Motion ("2022 Final Order"). The short body

of the order stated

> The Court having carefully reviewed the record, including all pleadings, Memoranda, the depositions, and prior Orders of this Court, the Court being of the opinion that there is no genuine issue of material fact sufficient to justify setting aside the [2002 Pension COAP] pursuant to CR 60.02 Motions filed in 2018 and thereafter, well more than one year after entry of the [2002 QDRO], and the Court being of the opinion that its [February 2020 Order] denying [Michael's] Motions is otherwise correct, IT IS ORDERED that [Michael's] CR 59 and CR 60 Motions are DENIED.

Michael appealed.[7]

## II. STANDARD OF REVIEW

On appeal, Michael challenges the court's factual finding that Michael

received legal notice of the 2002 Pension COAP. Any findings of fact by the trial

court "shall not be set aside unless clearly erroneous[.]" CR 52.01. Clearly

erroneous facts are those not supported by substantial evidence. *Eagle Cliff*

*Resort, LLC v. KHBBJB, LLC*, 295 S.W.3d 850, 853 (Ky. App. 2009) (citation

---

[7] According to the notice of appeal, Michael appeals only the 2022 Final Order. However, denial of a motion to alter, amend, or vacate pursuant to CR 59.05 is not appealable because it does not alter the judgment; rather, the appeal is from the underlying judgment. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019). As such, *both* the 2022 Final Order (regarding the denial of Michael's 2020 CR 60.02 motion) *and* the February 2020 Order (as the underlying order to Michael's CR 59.05 motion denial) are properly on appeal.

omitted).  Additionally, our review must give due regard "to the opportunity of the [circuit] court to judge the credibility of the witnesses."  CR 52.01.

Next, Michael argues the court erred in denying his CR 60.02 motions.  When a trial court denies a CR 60.02 motion, this Court reviews using the abuse of discretion standard.  *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011) (citing *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)).  "The test for abuse of discretion is whether the trial court's decision was 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'"  *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## III.   ANALYSIS

On appeal, Michael argues the 2002 Pension COAP went beyond the scope of the parties' original agreement within the Decree of Dissolution by including – in Brenda's annuity calculation – increases Michael made to the pension plan post-dissolution such as "time in grade bonus, increased earnings post decree, and military time[.]"  Michael asserts that because the court "ignored" his argument that he did not receive proper notice of the 2002 Pension COAP, the matter should be remanded for adversarial hearings to determine (1) if the 2002 Pension COAP was consistent with the Decree of Dissolution and (2) the credibility of Michael's legal counsel regarding notice of the 2002 Pension COAP.  However, such hearings are no longer legally appropriate.

-10-

First, we are bound by the factual finding that Michael had legal notice of the 2002 Pension COAP because that finding was based on substantial evidence and therefore, was not clearly erroneous. In the February 2020 Order, the court recognized that notice of the 2002 Pension COAP was "in dispute" but found Michael had sufficient notice, waived his arguments, and then the court adjudicated on the merits. The February 2020 Order stated that Brenda's motion to enter the 2002 Pension COAP was sent to Michael's counsel, but no objection was filed. Further, the clerk entered the 2002 Pension COAP, mailed it to Michael's counsel, and it was not returned as undelivered. The court determined that Michael had legal notice of the 2002 Pension COAP, based on substantial evidence, and therefore, its finding was not clearly erroneous. We are bound by that finding.

Second, Michael argues that the court abused its discretion in denying his CR 60.02 motions because his arguments (1) were brought within a reasonable time and (2) were of "an extraordinary nature justifying relief" because the 2002 Pension COAP did not represent the intent of the parties. Michael points to language in the Decree of Dissolution and the 2001 Pension COAP that was altered in the 2002 Pension COAP thereby making the new order "clearly inconsistent with the original terms of the parties' agreement[.]" However, the finding of legal notice limits our review.

CR 60.02 "was never meant to be used as another vehicle to revisit issues that should have been included or could have been included in prior requests for relief." *Baze v. Commonwealth*, 276 S.W.3d 761, 766 (Ky. 2008) (internal quotation marks and citation omitted).  Instead,

> [t]he purpose of CR 60.02 is to bring before a court errors which (1) had not been put into issue or passed on, and (2) were unknown and could not have been known to the moving party by the exercise of reasonable diligence and in time to have been otherwise presented to the court.

*Brozowski v. Johnson*, 179 S.W.3d 261, 263 (Ky. App. 2005) (quoting *Young v. Edward Tech. Grp., Inc.*, 918 S.W.2d 229, 231 (Ky. App. 1995)).

Here, Michael's argument is limited by the factual finding that he had legal notice of the 2002 Pension COAP.  Because the court determined that he had notice of the 2002 order, the alleged inconsistencies between the Decree of Dissolution and the 2002 Pension COAP and between the 2001 Pension COAP and the 2002 Pension COAP are no longer reviewable.  Michael knew or should have known about any inconsistency in time to present it to the court during the previous appeals and CR 60.02 motions.  Stated another way, if Michael wanted to argue that the original intent of the parties was not followed in the 2002 Pension COAP, he needed to request further findings and/or appeal that issue in a timely manner.  He presented no precedent that supports the contention that 16 years (2002 Pension COAP to 2018 CR 60.02 Motion) is a reasonable amount of time to

wait to bring the appeal. True, Michael did move forward with litigation within a year of receiving the post-retirement January 2018 OPM allocation letter stating Brenda's award of his pension, but that letter is not the start of our reviewable clock. The finding that he had notice requires us to use the filing of the 2002 Pension COAP as our starting clock, and almost 16 years is not reasonable under these circumstances.

The same principle applies to the survivorship right language. This language was contained in the 2001 Pension COAP, but Michael did not challenge it in his 2002 CR 60.02 Motion. The court correctly found that if he wanted to challenge that survivorship language, he needed to do so in 2002 when he challenged other aspects of the 2001 Pension COAP. Again, CR 60.02 "was never meant to be used as another vehicle to revisit issues that should have been included or could have been included in prior requests for relief." *Baze*, 276 S.W.3d at 766 (internal quotation marks and citation omitted).

Additionally, Michael argues the "extraordinary nature" of his claims warrants relief pursuant to CR 60.02(f). Michael argues, citing *Copas v. Copas*, 359 S.W.3d 471 (Ky. App. 2012) and *Snodgrass v. Snodgrass*, 297 S.W.3d 878 (Ky. App. 2009), that the court should be permitted to modify the pension distribution pursuant to CR 60.02(f). However, his reliance on those cases is misplaced.

-13-

Both *Snodgrass* and *Copas* deal with military active-duty retirement pensions that were reopened six years after the divorce decree was filed. *Copas*, 359 S.W.3d at 473; *Snodgrass*, 297 S.W.3d at 882. In both these instances, the parties agreed that the non-military spouse would receive a percentage of the military members' pension consistent with the months of the marriage, *i.e.*, the marital portion of the active duty time. *Copas*, 359 S.W.3d at 473-74; *Snodgrass*, 297 S.W.3d at 882-83. However, when the paperwork was submitted to Defense Finance and Accounting Service ("DFAS"), the agency charged with administering and distributing military retired pay, the non-military spouse was credited with all the months of service, not just the marital months. *Copas*, 359 S.W.3d at 473-74; *Snodgrass*, 297 S.W.3d at 882-83. In both cases, the courts reopened the pension matter to correct that error. *Copas*, 359 S.W.3d at 474; *Snodgrass*, 297 S.W.3d at 883. Stated another way, in both *Copas* and *Snodgrass*, the property distribution order failed to use language sufficient to convey the court's intent to the pension administrator, thereby "result[ing] in *an erroneous interpretation* of the order dividing marital property." *Copas*, 359 S.W.3d at 476-77 (emphasis added) (citing *Snodgrass*, 297 S.W.3d at 886-91). That is not what happened here.

First, Brenda's award was not calculated with non-marital months of service. As the February 2020 Order points out, the 2002 Pension COAP states, "This Order assigns to [Brenda] Fifty Percent (50%) of the *marital portion* of

[Michael's] monthly annuity determined *as of the date of* [*Michael's*] *retirement*." (Emphasis added.) Brenda's award of the FERS pension only includes the months of service before dissolution, the *marital portion*, not the months of service Michael accrued post-dissolution. Second, despite Michael's frustration with the inclusion of his increased earnings post-dissolution, the pension allocation to Brenda determined "as of the date of [Michael's] retirement" was not an error or misinterpretation. Determining Brenda's annuity as of the date of Michael's retirement is exactly what the 2002 Pension COAP stated, and the February 2020 Order sustained. There was no mistake or misinterpretation in the 2002 Pension COAP that needed "correction" by the court. Third, the pensions in *Snodgrass* and *Copas* were full military pensions. We are not at liberty to extend the rules of military pensions[8] to all federal pensions, including FERS pensions.

Michael did not present evidence to suggest the February 2020 Order or the 2022 Final Order were arbitrary, unreasonable, unfair, or unsupported by sound legal principles. As such, we find no abuse of discretion.

## IV. CONCLUSION

Therefore, the February 2020 Order and the 2022 Final Order of the Whitley Circuit Court are AFFIRMED.

---

[8] For example, excluding from the spouse annuity calculation all rank and salary increases after the date of dissolution.

ALL CONCUR.


BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Douglas G. Benge                        Marcia A. Smith
London, Kentucky                        David O. Smith
                                        Corbin, Kentucky