RENDERED: APRIL 3, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0478-MR

CYNTHIA MARIE LOVELESS                                  APPELLANT

                APPEAL FROM CRITTENDEN CIRCUIT COURT
v.                 HONORABLE BRANDI H. ROGERS, JUDGE
                      ACTION NO. 16-CI-00127

MARIANN LOVELESS AND
LASHEA SCHMITT, EXECUTRIX OF
THE ESTATE OF LARRY DON
LOVELESS                                            APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: Appellant Cynthia Marie Loveless ("Cynthia"), appeals from the Crittenden Circuit Court's order denying her motion to vacate her final divorce decree pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02.

Mariann Loveless and Lashea Schmitt (collectively "Appellees"), intervene as the

surviving spouse and estate executrix,[1] respectively, of Cynthia's former husband Larry Don Loveless ("Larry").

## BACKGROUND

Cynthia and Larry married in 1985. Larry worked in the coal mining industry and was the primary financial provider throughout the marriage. Cynthia first initiated divorce proceedings in 2016, but the couple then attempted a reconciliation. This attempt ultimately proved unsuccessful, so Cynthia filed an amended petition for divorce in 2018, citing irreconcilable differences.

Throughout that spring and summer, the couple debated property division and exchanged financial information. By August 2018, they had reached an initial agreement, and Cynthia petitioned the trial court to enter their agreement in the form of a court order. This agreement was styled as a "partial" settlement agreement, since there were still some issues in contention. For example, Cynthia had filed a motion to compel Larry to produce certain cancelled checks from his Regions Bank account.

The Loveless divorce hearing was held in March 2019. Both parties were represented by counsel. Shortly after the hearing began, the parties jointly requested a recess. The record notes that the hearing was then recessed with plans to reconvene at a later date. In the interim, an updated property settlement

---

[1] Ms. Schmitt has since been removed as executrix due to a conflict of interest.

agreement was circulated. On April 16, 2019, Cynthia answered questions from a notary, under oath, about the fairness of both the October 2018 partial settlement agreement and the April 2019 final property settlement agreement. "In your opinion are these agreements fair and equitable to both parties?" Cynthia answered: "Yes." A final property settlement agreement was filed with the court the very next day, indicating the parties had reached a resolution. The final agreement presented to the court incorporated the terms of the October 2018 partial settlement.

The trial court entered the final divorce decree in May 2019, and the property settlement agreement was incorporated by reference. Each party retained their respective non-marital property. Cynthia received a half interest in the marital home and permission to continue living there and Larry agreed to pay all of the telephone and utility bills as long as Cynthia still lived in the home. She also received half of the current value of Larry's profit-sharing and savings plan from his employer Alliance Coal, LLC. Larry was initially required to pay Cynthia $2,000 per month in maintenance, but this provision was terminated when he lost his job in February 2020.[2] Lastly, the settlement included written

---

[2] Cynthia told the trial court that Larry quit solely to avoid paying maintenance, but Larry produced the official letter from Alliance notifying him of his termination. The trial court noted that Cynthia was only 55 and employable, but there was no evidence presented that Larry, who was older and had health problems, would have any future job prospects. (Larry died just two years after the trial court halted the maintenance payments.)

acknowledgement that Larry had failed to disclose a money market account and awarded Cynthia $15,500 in compensation for this omission.

Larry remarried after the divorce was finalized, and he was married to his second wife—Appellee Mariann Loveless—at the time of his death in 2022. The trial court granted Mariann leave to intervene in this case since she is Larry's sole beneficiary and could be impacted financially by an adverse ruling.

Following Larry's funeral, his brother, Randy Loveless, mentioned to Larry's daughters that their father had loaned him $70,000 to buy property and that he had repaid Larry in cash. Cynthia learned of this discussion and subsequently filed a motion pursuant to CR 60.02(d), in May 2022, to vacate her final divorce decree—with the aim of reopening the proceeding and asserting a claim to additional funds from Larry's estate. She alleges that Larry concealed approximately $225,800 from her by diverting funds to his siblings and a friend, Ammon Yoder, and kept large amounts of cash on hand at his home, that went unreported on his disclosures. The Crittenden Circuit Court denied that motion in March 2025.[3] Cynthia next filed a motion to alter, amend, or vacate the court's order along with motions for specific findings of fact and a stay of execution of the

---

[3] The motion was pending from 2022 to 2025 due to an extended discovery period and several attempts to file a procedurally correct motion that would permit Larry's widow to intervene.

-4-

order. The trial court denied all three motions by order dated April 9, 2025. Cynthia timely filed a notice of appeal soon thereafter.

## STANDARD OF REVIEW

The decision whether to grant or deny a motion filed pursuant to CR 60.02 is wholly within a trial court's discretion. Therefore, issues regarding CR 60.02 motions are reviewed under an abuse of discretion standard. *Age v. Age*, 340 S.W.3d 88, 94 (Ky. App. 2011); *Baze v. Commonwealth*, 276 S.W.3d 761 (Ky. 2008) (citing *White v. Commonwealth*, 32 S.W.3d 83, 86 (Ky. App. 2000)); *Schott v. Citizens Fidelity Bank and Trust Co.*, 692 S.W.2d 810 (Ky. App. 1985). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Additionally, "[r]elief pursuant to CR 60.02 is an extraordinary remedy which should be cautiously granted." *Copas v. Copas*, 359 S.W.3d 471, 476 (Ky. App. 2012). With these guiding principles in mind, we turn to the record and the arguments at hand.

## ANALYSIS

Cynthia alleges that a "cabal"—comprised of Larry's siblings Randy and Loretta, along with friend Yoder—colluded to defraud her from receiving her fair share of marital property. This Court, however, is not charged with assessing the validity of fraud allegations against Larry in this divorce proceeding. Rather,

the sole question upon appeal is whether the trial court abused its discretion when it denied Cynthia's CR 60.02 motion and refused to vacate her final divorce decree.

CR 60.02 provides that a court may relieve a party or his legal representative from its final judgment only upon the following limited grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Civil Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.

Cynthia's allegations would ordinarily fall under CR 60.02(c), because she accuses Larry of submitting inaccurate financial information. However, motions made pursuant to CR 60.02(c) must be made no more than one year after entry of the final judgment. Since the final divorce decree in this case was entered in 2019, a motion pursuant to CR 60.02(c) would necessarily be time-barred. Therefore, Cynthia seeks relief pursuant to CR 60.02(d)—fraud affecting

the proceedings, other than perjury or falsified evidence—that requires motions be made "within a reasonable time."

Cynthia relies heavily on *Terwilliger v. Terwilliger*, 64 S.W.3d 816 (Ky. 2002), to support her position in this case. While *Terwilliger* does hold that fraud upon an individual party *qualifies* as "fraud affecting the proceedings," that simply enables potential relief pursuant to CR 60.02(d). It does not, however, go so far as to mandate a court grant relief (in this case, re-opening a divorce decree) when confronted with mere allegations or speculation of fraud. Cynthia argues that post-*Terwilliger*, the only requirement to succeed for a CR 60.02(d) movant is to establish the other party intentionally misrepresented a marital asset's value when they entered into a settlement agreement. This interpretation goes beyond *Terwilliger*'s actual holding. Indeed, case law makes clear that the discoverability and circumstances of the alleged fraud are relevant factors for a court to consider before granting relief under CR 60.02(d). *See McMurry v. McMurry*, 957 S.W.2d 731, 733 (Ky. App. 1997); *see also Modern Heating & Supply Co. v. Ohio Bank Bldg. & Equip. Co.*, 451 S.W.2d 401, 403 (Ky. 1970) ("The law demands the exercise of due diligence by the client as well as by his attorney in the prosecution or defense of litigation.").

Neither party appears to have found any published cases addressing the issue of discovery due diligence in divorce proceedings. However, *Petrie v.*

*Petrie*, uncited by either party, does provide helpful guidance. 262 S.W.2d 182 (Ky. 1953). In *Petrie*, a wife appealed her divorce decree on several grounds, chief among them being the trial court's refusal to reopen the case based on newly discovered evidence. Specifically, her husband's real estate holdings had proven to be more valuable than he reported. This Court declined to reopen the case, noting there was no evidence presented that an accurate appraisal could not have been obtained with basic due diligence.

Similarly, in *Fry v. Kersey*, this Court noted that "one of the chief factors" in determining whether to grant relief from a divorce decree "pursuant to CR 60.02" is whether the party had a prior ability to present the claim. 833 S.W.2d 392, 394 (Ky. App. 1992) (quoting *Schott v. Citizens Fidelity Bank & Trust Co.*, 692 S.W.2d 810, 814 (Ky. App. 1985)).

While neither *Petrie* nor *Fry* involved allegations of fraud by a divorce litigant, an important principle from both is that a party in such a proceeding is still expected to undertake basic due diligence. Courts are loath to grant relief pursuant to CR 60.02 on grounds that were known or could have been ascertained by due diligence prior to entry of the final judgment. *Board of Trustees of Policemen's and Firemen's Retirement Fund of City of Lexington v. Nuckolls*, 507 S.W.2d 183, 186 (Ky. 1974).

Here, the alleged fraud committed by Larry, was not particularly complex and all centered around underreporting his marital assets in a scheme involving close relatives and a friend. Indeed, it was both ascertainable and, in the instance of his hidden money market account, already known to Cynthia. While the extent of the alleged fraud may not have been completely realized at the time of the divorce settlement, many red flags relating to Larry's penchant for underreporting and operating with traceless cash were present.

Larry's financial disclosure statements, for example, included the bank accounts that Cynthia claims he used to defraud her by writing checks to others. After he submitted his disclosure statement, Larry was ordered to supply copies of specific checks, and these are the same checks that Cynthia has now presented in support of her CR 60.02 motion. Clearly, she must have harbored some suspicions prior to her divorce settlement, otherwise she would not have asked the trial court to compel Larry to produce specific checks. For whatever, reason, though, she did not pursue further investigation of those checks.

Furthermore, prior to the divorce hearing recess, Cynthia testified that she had always been aware that Larry routinely kept large sums of cash on hand, and yet she never questioned the fact that Larry did not disclose any cash on hand at all in his verified financial disclosure statement. A $50,000 check from Larry to his sister Loretta and endorsed by Yoder was entered into evidence before the

recess. Although this was one of the checks Cynthia suspected represented fraudulent activity, she took no further action on this evidence. Being aware of fraudulent tendencies serves to put a reasonable person on notice that heightened scrutiny might be warranted, and that independently verifying the suspect party's disclosures may be wiser than accepting them at face value.

At least two of the parties Cynthia suspected of subterfuge—Randy Loveless and Ammon Yoder—were present at the hearing and could have been questioned under oath but were never called to testify. The property settlement agreement, later submitted to the court, explicitly acknowledged Larry's failure to disclose a money market account, and the sanction against him for this action. That disclosure alone should have put Cynthia on notice that additional nondisclosures were possible. All these facts show that information existed, and was discoverable, prior to and at the hearing, if Cynthia had pursued her case instead of choosing to settle. She had both time and opportunity to raise the issues on which she now bases her CR 60.02 motion—but chose not to.

Cynthia faults the trial court for failing to appreciate the significance of *Terwilliger*, but that case was cited in the court's final order and appropriately differentiated. Although cognizant that *Terwilliger* provides some flexibility in determining what constitutes fraud affecting the proceedings, that flexibility does not excuse a consistent lack of due diligence on a litigant's part to fully expose that

fraud.  Furthermore, the factual distinctions here when compared with *Terwilliger* are significant.  The wife in that case was prevented from adequately advocating her side of the case due to the husband's unconscionable coercive tactics.  Here, Cynthia was not prevented from appearing in court, not prevented from presenting her side of the case, and not pressured into settling.  Indeed, she was continuously represented by competent counsel throughout the proceedings, going back to 2016 when she initiated the divorce proceeding.  With counsel present, Cynthia had full opportunity to question witnesses and evidence or request additional discovery.  She has not alleged any external coercion to settle, and she voluntarily chose to end the proceedings and enter into a final settlement—one that contained a formal acknowledgement that Larry had not fully complied with discovery.  For better or worse, Cynthia exercised her right to settle the proceeding.  The fact that a decision may later appear unwise in hindsight is not sufficient grounds to grant the extraordinary remedy of vacating a final judgment.

Lastly, the trial court presided over the entirety of Cynthia and Larry's divorce proceedings as well as the CR 60.02 hearing held in 2025.  It had prior knowledge of the extensive case record and history plus the added advantage of observing witnesses in person and, thus, being able to make crucial determinations about reliability and the relative strengths and weaknesses of the parties' respective cases.  It made particularized findings of fact detailing Cynthia's prior awareness

-11-

of Larry's suspect financial practices and her multiple opportunities to exercise due diligence in further investigating his recent dealings. The trial court found that there was no evidence whatsoever that Cynthia was under any sort of pressure or duress to settle.

As noted above, relief granted pursuant to CR 60.02 is an extraordinary remedy. When exercising its discretion, the trial court must consider whether the movant had a fair opportunity to present her claim at the hearing on the merits. *Nuckolls*, 507 S.W.2d at 187. Here, all of the alleged events which Cynthia now claims justify relief pursuant to CR 60.02 occurred before the final divorce decree was entered. Further, her actions throughout the divorce proceedings, such as requesting specific cancelled checks, indicate that she was suspicious about the accuracy of Larry's financial disclosures. Despite this suspicion, she declined to pursue further discovery and elected to settle. The trial court took note of all these factors in its order denying Cynthia's CR 60.02 motion.

## CONCLUSION

In light of the circumstances described above and the reasons stated, we cannot find that the trial court abused its discretion. We hereby AFFIRM the Crittenden Circuit Court's order denying the Appellant's motion to vacate her final divorce decree.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William D. Tingley
Covington, Kentucky

BRIEF FOR APPELLEE:

Cobie D. Evans
Marion, Kentucky